# LYLE EIDE v. WHIRLPOOL SEEGER CORPORATION AND ANOTHER.

109 N. W. (2d) 47.

April 28, 1961—No. 37,993.

*Firestone, Fink, Krawetz, Levy & Miley,* for relators.
*Arnold M. Bellis* and *Robins, Davis & Lyons,* for respondent.

THOMAS GALLAGHER, JUSTICE.

Certiorari to review an order of the Industrial Commission awarding medical expenses to employee, Lyle Eide, to be paid for by Whirlpool Seeger Corporation, employer, and Aetna Casualty & Surety Company, its insurer.

On appeal it is contended that medical expenses involved were the result of a knee injury in a badminton game in which the employee was engaged on July 29, 1958, which did not arise out of and in the course of his employment by the employer; that, while subsequent thereto there occurred a recurrence of a back injury sustained by employee in the course of his employment by the employer, the knee injury constituted an independent, intervening cause, the effect of which should not be included in computing compensation allowable for the original injury.

In 1954 employee injured his back in the course of employment. As a result he underwent surgery for removal of a ruptured disc for which he received medical benefits and compensation. In 1956 a recurrence of pain in his back required further surgery for which he received additional compensation and medical benefits. Subsequently in March 1957, while in the employment of the employer here, he fell and reinjured his back. For this he received further hospital and medical compensation. Thereafter, because of a shortage of light work, he left his employment and became self-employed as a barber. Following this change of employment, he continued to receive compensation in the

form of payment of medical and hospital expenses incurred in connection with the injury to his back.

On July 29, 1958, while engaged in a game of badminton at the residence of relatives in St. Paul, employee received an injury to his left knee which had no relationship to his former injuries. On July 30, 1958, he went to Ancker Hospital in St. Paul for treatment of the injured knee. While he was there a rigid plaster cast was applied from his left ankle to his left thigh, which did not permit bending of the left knee. On August 5, 1958, after resuming his trade of barbering, he noticed a recurrence of the pain in his back. On August 6, 1958, he removed the cast above described. On August 9, 1958, he entered Miller Hospital in St. Paul and remained there until August 25, 1958, for treatment of the knee injury as well as for treatment of his back.

Undisputed medical testimony submitted before the commission was to the effect that, in the opinion of the medical expert, the hospitalization of August 9, 1958, was secondary or due to the old injury to the employee's back, stimulated by the new, minor injury to his knee; that because of the rigid cast on his left leg employee had been required to swing his left foot in a rotary movement while walking which caused his pelvis to tilt and swing outward; that had the employee not had the prior back injury this method of walking would not have incapacitated him or given him any additional trouble; and that except for this fact employee would not have had this serious exacerbation of pain to his back, which required further medical and hospital treatment.

In its opinion the commission set forth:

"The lay testimony shows the employe had been having trouble with his back following the two surgical procedures and has had increased difficulty following his injury of March 2, 1957.

"The medical testimony was that the straight leg cast caused excessive tilting of the pelvis and because of the employe's underlying back condition this caused a recurrence of pain. The doctor testified that of all the cases he had seen involving such casts, the only two that experienced back trouble had prior disc injuries.

"The insurer and employer contend that the injury in the badmin-

ton game * * * was an independent intervening cause and thus not liable for the hospitalization for the back pain.

"The insurer relies primarily on the case of Kill v. Industrial Commission, 160 Wisc. 459, 152 N. W. 148. * * *

* * * * *

"We do not believe that the instant case is the Kill case. * * * In the instant case, the employe had never completely recovered from his back condition resulting from the aggravation by his accident of March 2, 1957. He received no back injury from the actual game of badminton (a game, certainly not per se one of undue stress on [sic] an act of imprudence), but rather from the wearing of the cast which only affected his back because of its unhealed, permanently weakened condition.

"We therefore assess responsibility for the medical expenses in issue to his industrially caused back condition."

On appeal relators contend that the knee injury constituted an intervening cause relieving them of liability for medical expenses incurred for any treatment thereafter as being unrelated to the injury sustained March 2, 1957; that the accident involving the knee was not occupational; and that even though it aggravated a preexisting occupational condition any treatment thereafter was not compensable under the act.

■ Under Minn. St. 176.135, subd. 1, an employer is required to furnish an employee injured in an industrial accident with such medical, surgical, and hospital treatment as may be reasonably required at the time of the injury and thereafter to cure and relieve from its effects and for the employee's physical rehabilitation. There is no statute limiting the time in which the commission may grant a rehearing on the need for further medical and hospital care in the treatment of the original injury. Fehland v. City of St. Paul, 215 Minn. 94, 9 N. W. (2d) 349.

■ Under these provisions, where an industrial accident creates a permanently weakened physical condition which an employee's subsequent normal physical activities may aggravate to the extent of requiring additional medical or hospital care, such additional care is compensable. Peniston v. City of Marshall, 192 Minn. 132, 255 N. W.

860. Of course, there may be situations where aggravation of the original injury requiring additional medical or hospital care is the result of such unreasonable, negligent, dangerous, or abnormal activity on the part of the employee that it can be said that such additional care was not a natural consequence flowing from the primary injury. In such cases, of course, the additional services required for treatment would not be compensable. Kill v. Industrial Comm. 160 Wis. 549, 152 N. W. 148, L.R.A. 1916A, 14.

■ Here there is evidence to sustain the commission's finding that the additional medical and hospital care required for treatment of the employee's back was compensable. It was not occasioned by any abnormal or unusual physical activity on his part. The evidence falls short of establishing any relationship between the treatment described and some independent or intervening cause. The injury sustained in the badminton game was to the employee's knee and it was the cast applied to his leg which caused the back injury to recur. Badminton cannot be said to involve a dangerous or unusual physical effort. It is a mild form of athletic endeavor in which physical contact is totally absent. There is nothing in the record to indicate that the employee had been instructed to abstain from engaging in activities of this kind or that if he did participate in them it would be at the risk of a recurrence of his back injury. Had it been unnecessary to apply the cast to his leg, the game would not have affected his back in any way. Under such circumstances, it is clear that the subsequent medical and hospital care for its treatment was a natural consequence flowing from the primary injury without any intervening or independent cause. This being true, it would follow that under § 176.135, subd. 1, the employee would be entitled to compensation for such care and treatment.

■ Relators assert that the medical and hospital treatments included treatments to the employee's injured knee and that they would not be liable for this part of the employee's care. The record indicates that on August 5, 1958, the recurrence of the back injury took place and the employee consulted his physician with reference thereto; that on August 9, 1958, he was directed by his physician to enter Miller Hospital for treatment to his back; and that he remained there for such

purpose until August 25, 1958. His physician was asked if the hospital treatment included treatment for the knee injury. He replied:

"A. No, there wasn't really much to do about it. It was in a cast * * * and it was all right. He had a little cartilage problem there, * * * and he did quite well with the elastic bandage. We let him go along with it."

He testified further that his bill for services in the sum of $129 related solely to his treatment of the employee's back. The only evidence in opposition to this was the employee's statement on cross-examination that while he was in the hospital some heat treatments had been applied to his knee. There is no indication that any charges were made for this either by the hospital or by the doctor. Clearly such evidence would be inadequate to upset the commission's finding that the employee had incurred medical expenses in the sum of $129, and hospital expenses in the sum of $483.55, for care and treatment to his back because of a recurrence of the primary compensable injury.

Respondent is allowed $250 attorney's fees.

Affirmed.

MR. JUSTICE OTIS, not being a member of the court at the time of the argument and submission, took no part in the consideration or decision of this case.