## WILLIAM L. WALLACE v. JUDD BROWN CONSTRUCTION COMPANY AND ANOTHER.

131 N. W. (2d) 540.

November 13, 1964—No. 39,288.

*Tyrrell, Jardine, Logan & O'Brien* and *Donald M. Jardine,* for relators.

*Gallagher, Madden & Gallagher, Miles B. Zimmerman,* and *Lawrence T. Gallagher,* for respondent.

KNUTSON, CHIEF JUSTICE.

Certiorari to review a decision of the Industrial Commission awarding compensation benefits to petitioner.

The parties are in substantial agreement as to the facts. It is admitted that on June 27, 1955, while employed by Judd Brown Construction Company, petitioner fell from a railroad tank car to the ground, a distance of from 12 to 14 feet, and suffered an injury to his lower left leg, described as an extensively comminuted fracture of the joint surface of the tibia. He was treated at the Mayo Clinic, where it was determined that a solid arthrodesis of the left knee joint was necessary, and that operation was performed on September 6, 1956, leaving the left knee joint immobilized in a slightly flexed position. Petitioner never returned to work for Judd Brown Construction Company thereafter. He was paid by that employer and its insurer in full for all medical expenses and for the disability resulting from the accident of June 27, 1955. It was determined at that time that he had suffered a 50-percent permanent partial disability, for which he received compensation according to the Workmen's Compensation Act.

On April 11, 1960, petitioner was voluntarily and gratuitously helping his brother wreck an old house. In so doing, another man and he were attempting to remove the roof by loosening two-by-fours so that they could tip the roof off the building. To perform this work, petitioner stood on a platform consisting of an old door about 5½ feet long and 2½ feet wide, which was supported by two-by-fours or two-by-sixes about 7 or 8 feet above a solid board floor. While attempting to remove a two-by-four with a wrecking bar, petitioner stood with one foot on the door and one foot on a joist, also consisting of a two-by-four, upon which the door rested. Suddenly, the joist broke and petitioner fell to the board floor, landing on both feet. As a result of this fall, he sustained a fracture of the left femur just above the area of the knee which had been immobilized due to the prior accident. He also suffered an extensive laceration of the surface of the third left finger, which caught on a nail when he fell, and a smaller laceration of the left index finger. He was treated for these injuries by an orthopedic surgeon at the Mayo Clinic.

The Industrial Commission found that the injury to petitioner's leg caused by the fall on April 11, 1960, was the proximate result of the original injury on June 27, 1955.

While the doctors who testified in behalf of petitioner admitted that he could have broken his leg in the second fall without the arthrodesis, the medical testimony is such that it will support a finding that a fracture is more apt to result from a fall of this kind when a person's knee is immobilized because there is not the ability to flex the knee and thereby reduce the impact of the fall.

The only question in this case is whether the second fall was the proximate result of the injury originally sustained on June 27, 1955.

The controlling statute under which the right to compensation must be established, if at all, is Minn. St. 176.135, subd. 1, which, as far as material here, reads:

"The employer shall furnish such medical, surgical and hospital treatment, including nursing, medicines, medical and surgical supplies * * * as may reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury."

The Industrial Commission and petitioner rely for the most part on Eide v. Whirlpool Seeger Corp. 260 Minn. 98, 109 N. W. (2d) 47. In that case an employee of Whirlpool Seeger sustained a compensable injury to his back in 1954 and underwent surgery for removal of a ruptured disc, for which he received medical benefits and compensation. He thereafter suffered recurrences of his back injury, for which he received hospital and medical compensation. After leaving his employment and becoming self-employed as a barber, he continued to receive compensation in the form of medical and hospital expenses incurred in connection with the injury to his back. Some 4 years after the original injury, while engaged in a game of badminton, he received an injury to his left knee, which had no relationship to the former injuries, but in the treatment of it a rigid plaster cast was applied from his left ankle to his left thigh, which did not permit the bending of his left knee. After returning to his trade of barbering, he had a recurrence of the pain in his back and required further

medical treatment. Under these circumstances, we upheld an award of further medical and hospital care. We said (260 Minn. 101, 109 N. W. [2d] 49):

"Under Minn. St. 176.135, subd. 1, an employer is required to furnish an employee injured in an industrial accident with such medical, surgical, and hospital treatment as may be reasonably required at the time of the injury and thereafter to cure and relieve from its effects and for the employee's physical rehabilitation. * * *

"Under these provisions, where an industrial accident creates a permanently weakened physical condition which an employee's subsequent normal physical activities may aggravate to the extent of requiring additional medical or hospital care, such additional care is compensable."

We recognized that cases do arise where subsequent injury is not compensable. In that regard we said (260 Minn. 102, 109 N. W. [2d] 49):

"* * * Of course, there may be situations where aggravation of the original injury requiring additional medical or hospital care is the result of such unreasonable, negligent, dangerous, or abnormal activity on the part of the employee that it can be said that such additional care was not a natural consequence flowing from the primary injury. In such cases, of course, the additional services required for treatment would not be compensable."

We cited in support of the above statement Kill v. Industrial Comm. 160 Wis. 549, 152 N. W. 148, L. R. A. 1916A, 14. That case involved a situation in which an employee of a packing company sustained an injury to his left wrist. When the wound was practically healed and he had been discharged by a physician, the employee engaged in a boxing match and shortly thereafter suffered pain in his wrist. It was found that his wrist had become infected and he lost bones of his hand and wrist, incapacitating him from following his trade. In denying recovery against the employer at the time of the original injury, the Wisconsin court held that the boxing bout was the proximate cause of his subsequent injury and that if he had not en-

gaged in the boxing match he would not have sustained such injury.

The case now before us involves one of the more difficult areas in the application of our workmen's compensation law. The difficulty in formulating an all-inclusive rule is recognized in 1 Larson, Workmen's Compensation Law, § 13.00, where the following general rule is stated:

"When the primary injury is shown to have arisen out of and in the course of employment, every natural consequence that flows from the injury likewise arises out of the employment, unless it is the result of an independent intervening cause attributable to claimant's own intentional conduct."

And the following is stated interpreting the rule (Id. § 13.11):

"A distinction must be observed between causation rules affecting the primary injury * * * and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary injury, it has been shown that the 'arising' test is a unique one quite unrelated to common-law concepts of legal cause, and it will be shown later that the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of 'direct and natural results,' and of claimant's own conduct as an independent intervening cause.

"The basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is the direct and natural result of a compensable primary injury."

We start out then with the basic rule that a subsequent injury, whether an aggravation of the original injury or a new injury, is compensable if it is a direct and natural result of the primary compensable injury. It is in determining whether the subsequent injury is causally related to the original injury that trouble arises. Thus, there are numerous cases holding that where the subsequent injury results from a

weakened condition caused by the original injury the necessary causal connection exists and compensation is payable. The same result frequently follows when an injured person aggravates an original injury or sustains a new one as the result of some accident which occurs while he is seeking treatment for the original injury. Such was the case of Fitzgibbons v. Clarke, 205 Minn. 235, 285 N. W. 528. See, also, Peniston v. City of Marshall, 192 Minn. 132, 255 N. W. 860.

Thus, while the workmen's compensation laws are generally construed liberally in favor of the injured employee, it is evident that a line must be drawn somewhere in cases involving subsequent injuries or else an employer who has discharged his obligation as to the original injury will become an insurer up to a full 100-percent permanent disability as a result of any aggravation or recurrence of the original injury, no matter how it is caused. While it probably is unwise to attempt to formulate an all-inclusive rule in this field, it would seem that, where the original injury is aggravated by or the injured person sustains a new injury as the result of an occurrence that has no causal relation to the original injury, it must be said that the later injury is not a consequence of the first; hence, that no liability exists.

In 1 Larson, Workmen's Compensation Law, § 13.11, p. 192.68, the following appropriate pair of principles is submitted:

"When the injury following the initial compensable injury arises out of a quasi-course activity, such as a trip to the doctor's office, the chain of causation should not be deemed broken by mere negligence in the performance of that activity, but only by intentional conduct which may be regarded as expressly or impliedly prohibited by the employer.

"When, however, the injury following the initial compensable injury does not arise out of a quasi-course activity, as when a claimant with an injured hand engages in a boxing match, the chain of causation may be deemed broken by either intentional or negligent claimant misconduct."

. Applying these principles to the admitted facts of this case—the subsequent injury was the result of the breaking of the two-by-four on which petitioner stood. His previous injury had absolutely nothing to

do with the occurrence which caused his fall. If his stiff leg had caused him to fall, we might well have a different case, but no one contends that his disability had anything to do with the breaking of the two-by-four. The most that can be said is that medical evidence will sustain a finding that once he had fallen he was more likely to sustain an injury because his stiff leg would not absorb a shock as well as a normal leg; but in determining causal relationship it would seem that we must look to the occurrence that made the injury possible rather than to the result that followed.[1]

At first blush, Eide v. Whirlpool Seeger Corp. 260 Minn. 98, 109 N. W. (2d) 47, and the case now before us appear similar, but actually there are many distinguishing features about them. In the Eide case, we upheld an award for additional medical and hospital expenses incurred *to continue treatment of the original injury.* The award of the Industrial Commission stated the reasons for its decision as follows (260 Minn. 101, 109 N. W. [2d] 49):

"* * * In the instant case, the employe had never completely recovered from his back condition resulting from the aggravation by his accident of March 2, 1957. He received no back injury from the actual game of badminton * * * but rather from the wearing of the cast which only affected his back because of its unhealed, permanently weakened condition.

"We therefore assess responsibility for the medical expenses in issue to his industrially caused back condition."

We held that the knee injury sustained in the badminton game did not constitute an intervening cause but was an ordinary, normal physical activity. We held that these additional medical and hospital expenses were payable under § 176.135, subd. 1, which requires an employer to furnish an employee who is injured in an industrial accident with such medical, surgical, and hospital treatment as may reasonably be required at the time of the injury and thereafter to cure and relieve

---

[1]While Sporna v. Kalina, 184 Minn. 89, 237 N. W. 841, 76 A. L. R. 1280, is not a workmen's compensation case, the court's discussion of intervening cause is pertinent.

from its effects and for the employee's physical rehabilitation. It should be noted that no compensation award was made for additional disability. The case deals exclusively with additional medical and hospital expenses *necessary to continue the treatment of the original injury to the back*. In that regard we said (260 Minn. 102, 109 N. W. [2d] 50):

"* * * it is clear that the subsequent medical and hospital care for its treatment was a natural consequence flowing from the primary injury without any intervening or independent cause. This being true, it would follow that under § 176.135, subd. 1, the employee would be entitled to compensation for such care and treatment."

It is also noteworthy that no award was made for either medical or hospital expenses to treat the knee injury, nor was any compensation allowed for additional disability as a result thereof.

Thus, it would seem that the Eide case lies on one side of a borderline where it can reasonably be held that the additional medical and hospital expenses were a consequence of the original injury, aggravated only by an ordinary activity as a result of a weakened condition resulting directly from the original injury, the treatment for which had not yet been completed.

The case now before us lies on the other side of the borderline. Here, the additional medical and hospital expenses were not required as further treatment of the original injury. That treatment had come to an end. These expenses were required to treat an entirely new injury, sustained as a result of an occurrence which had no causal relation to the original injury at all. Compensation was also allowed as an award for additional disability which arose not out of the original injury but as a result of the subsequent injury. Here, it cannot reasonably be said that the subsequent injury is a consequence of the original injury. Under these circumstances, the Eide case is not controlling.

It would seem that our legislature has recognized the possibility that a disabled person may well be injured again in the future. In order to encourage employment of such individuals, we have § 176.13, which provides that under certain circumstances, if a person having a physical

impairment suffers an injury in the course of employment by an employer not responsible for the original injury, part of the recoverable compensation will be paid by the special compensation fund. It has been held that where the second injury occurs while the employee is employed by a different employer the causal thread may be broken. See, 1 Larson, Workmen's Compensation Law, § 13.12.

In Johnnie's Produce Co. v. Benedict & Jordan (Fla.) 120 So. (2d) 12, the Florida court recognized the fact that where a workman was injured while working for a second employer, after the first employer had discontinued compensation payments, reimbursement could be obtained by the second employer from the state special disability fund, which apparently is similar to our special compensation fund.

If, then, petitioner in this case had been working for an employer covered by the Workmen's Compensation Act at the time he sustained his last injury, we doubt that anyone would claim that the employer for whom he had been working when he sustained the first injury would be liable for compensation due as a result of the last injury. If that is so, the law ought to be the same even though the employee is gratuitously working for his brother. All medical and hospital expenses necessary to treat the original injury have been paid, and petitioner has received compensation based on all disability resulting therefrom, including a 50-percent permanent partial disability. Under the decision of the Industrial Commission now before us, the original employer will become liable for more medical and hospital expenses as a result of a new injury and an additional 10-percent permanent partial disability as a result of the second fall, even though the disability caused by the first accident had absolutely nothing to do with the occurrence that brought about the later disability. This, we think, goes beyond the liability contemplated by our Workmen's Compensation Act.

Reversed.

MR. JUSTICE SHERAN took no part in the consideration or decision of this case.