Theresa JACKSON, Relator,

v.

RED OWL STORES, INC., and Commercial Union Assurance Company, Red Owl Stores, Inc., and Hartford Insurance Company, Respondents,

Steve Keefe, Commissioner of the Department of Labor and Industry, intervenor, Respondent.

No. C4–85–473.

Supreme Court of Minnesota.

Oct. 11, 1985.

Gary C. Reiter, Minneapolis, for appellant.

Jon J. Johnson, Minneapolis, for Commercial Union Assur.

Frederick E. Kaiser, St. Paul, for Hartford Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., Leslie M. Altman, Sp. Asst. Atty. Gen., St. Paul, for Steve Keefe.

YETKA, Justice.

This case is brought before this court by writ of certiorari. Relator, Theresa Jackson, originally filed a claim petition with the Minnesota Department of Labor and Industry, Workers' Compensation Division, against respondent, Red Owl Stores, Inc., and its insurers for expenses incurred in treatment of a systemic rheumatoid shoulder disorder and for psychological consultations. A compensation judge found that 1983 amendments to the Workers' Compensation Act made all determinations necessary in monitoring medical expenses the exclusive responsibility of the commissioner of the Department of Labor and Industry. Jackson appealed to the Workers' Compensation Court of Appeals, claiming that jurisdiction rested exclusively with the compensation judge because the employer contested the causal relationship between the medical expenses and her employment. The commissioner intervened in support of his jurisdiction. The Workers' Compensation Court of Appeals affirmed the compensation judge. We reverse the Workers' Compensation Court of Appeals and remand for hearing before a compensation judge.

In 1973 and 1979, Theresa Jackson sustained serious physical injuries arising out of her employment at Red Owl Stores. Jackson is in her early fifties and, when employed at Red Owl, worked 40–45 hours a week as a retail packager, a job which involved lifting and packaging bakery goods. On May 4, 1972, Jackson was struck on the head by several filled bakery pans that fell from a high cart. She sustained facial lacerations and a neck fracture and eventually underwent a surgical spinal fusion in her neck vertebrae. Although still suffering from the effects of her injury, Jackson returned to work on a full-time basis in September of 1974. On June 18, 1979, while away from work, Jackson sustained an aggravation to her neck injury when she rose from a chair. Again, she was hospitalized and received a surgical spinal fusion. Jackson has been unable to return to work, and Red Owl, Commercial Assurance and Hartford Insurance have paid temporary total disability benefits and 35 percent permanent partial disability benefits since 1979.

On June 30, 1983, Jackson filed a claim petition against Red Owl and its insurers for expenses incurred in treatment of a systemic rheumatoid shoulder disorder and for psychological consultations. She contends that her present shoulder disorder and her psychological problems are directly related to her earlier work-related injuries. Red Owl and the insurers deny that these medical expenses are causally related to the earlier injuries. At pretrial conference with a compensation judge of the Office of Administrative Hearings, Red Owl and the

insurers objected that the judge lacked jurisdiction under the 1983 amendments to the workers' compensation statutes and requested that the claim be referred to the Department of Labor and Industry, Medical Services Division. The compensation judge found that the 1983 amendments made all determinations necessary to monitoring medical expenses the exclusive responsibility of the commissioner of the Department of Labor and Industry and, therefore, canceled the scheduled hearing and forwarded the case to the commissioner on August 13, 1984. Jackson appealed to the Workers' Compensation Court of Appeals, claiming that jurisdiction rested exclusively with the compensation judge. Again, the commissioner intervened in support of his jurisdiction.

The Workers' Compensation Court of Appeals affirmed the pretrial order on February 12, 1985. The majority ruled that, while jurisdiction over a medical expense such as Jackson's claim previously rested in the compensation judge, the 1983 amendments to the workers' compensation statutes transferred this authority to the commissioner. According to the majority, Jackson's claim presents a medical causation issue, that is, whether her present expenses are medically related to the original work-related injury. The court found that, under the 1983 amendments, the commissioner has the broad authority to determine all relevant factual and legal issues related to a medical services claim in order that he may carry out his statutory responsibility to monitor medical expenses in the workers' compensation system. Therefore, the court ruled that the compensation judge did not abuse his discretion in ordering the matter forwarded to the commissioner.

In his dissenting opinion, Judge Raymond O. Adel said that Jackson's claim presented an issue of primary liability and, therefore, should not be determined by the commissioner. By statute, the commissioner's authority is limited to determining the reasonableness and necessity of medical treatment. The commissioner does not, Judge Adel concluded, have jurisdiction over issues of primary liability and the nature and extent of a work injury.

After granting certiorari, this court, on June 13, 1985, ordered supplemental briefs addressing both the constitutional right of an employee seeking reimbursement of medical expenses to a hearing before a compensation judge and the effect that a determination by the commissioner concerning causation issues in medical expense claims will have on any future disability claims of the employee.

The issues raised by this case are:

1.  Whether the 1983 amendments to the statute give the commissioner of labor and industry the authority to determine whether primary liability exists and/or whether there is medical causation between current medical expenses and the original work-related injury;

2.  If the 1983 statutory changes are deemed broad enough to give the commissioner the authority to determine medical causation and primary liability issues, whether such statutory authority violates the due process clauses of the United States or Minnesota Constitution.

We do not deem it necessary to decide the constitutional issue cited. The case can be decided on statutory construction alone.

The matter is before the court pursuant to Minn.Stat. § 176.471, subd. 1(1) (1984) providing for review by certiorari when a party alleges that a WCCA order does not conform with the provisions of the Minnesota workers' compensation statutes. This is a question of law, and, thus, this court will freely substitute its own judgment for that of lower courts and agencies. *Blue Earth County Welfare Dep't. v. Cabellero*, 302 Minn. 329, 225 N.W.2d 373 (1974).

In 1983, the state legislature transferred jurisdiction to review medical health care issues in workers' compensation claims from the compensation judges of the Office of Administrative Hearings to the commissioner of the Department of Labor and

Industry. 1983 Minn. Laws, ch. 290, § 84. The answer to the present question hinges on whether the commissioner's new authority extends to determining if there is a medical causal connection between an original work-related injury and subsequent medical treatment.

The commissioner's present jurisdiction over medical health care issues in workers' compensation claims derives from several statutory provisions. Under Minn.Stat. § 176.103, subd. 1 (1984), the commissioner is vested with the authority to "review clinical health care providers who render services to injured employees," in order to "establish a quality control system within the department of labor and industry." *Id.* The commissioner's duties are set forth as follows:

> The commissioner shall monitor the medical and surgical treatment provided to injured employees, the services of other health care providers and shall also monitor hospital utilization as it relates to the treatment of injured employees. This monitoring shall include determinations concerning the appropriateness of the service, whether the treatment is necessary and effective, the proper cost of services, the quality of the treatment, the right of providers to receive payment under this chapter for services rendered or the right to receive payment under this chapter for future services. * * * The commissioner's authority under this section also includes the authority to make determinations regarding any other activity involving the questions of utilization of medical services, and any other determination the commissioner deems necessary for the proper administration of this section.

*Id.* at subd. 2. This authority rests exclusively in the commissioner: "The commissioner has the sole authority to make determinations under this section with a right of appeal to the medical services review board as provided in subdivision 3 and the workers' compensation court of appeals. A compensation judge has no jurisdiction in making determinations under this section." *Id.* The commissioner makes his determi-

nations with the assistance of a medical specialist. *Id.* at subd. 1. In addition, the legislature established the Medical Services Review Board to aid the commissioner in monitoring medical health care issues. *Id.* at subd. 3. The board, comprised of non-legal experts, makes recommendations to the commissioner under the following guidelines:

> In evaluating the clinical consequences of the services provided to an employee by a clinical health care provider, the board shall consider the following factors in the priority listed:
> (1) the clinical effectiveness of the treatment;
> (2) the clinical cost of the treatment; and
> (3) the length of time of treatment.
> *     *     *     *     *     *

> After making a determination, the board shall submit its recommendation in writing to the commissioner. The board shall advise the commissioner on the adoption of rules regarding all aspects of medical care and services provided to injured employees.

*Id.* at subd. 3(a). The board has an appellate function following a commissioner's determination:

> The board shall appoint three of its members to hear appeals from decisions of the commissioner regarding quality control and supervision of medical care; any other disputes regarding medical, surgical, and hospital care; decisions regarding the eligibility of medical providers to receive payments; or any other determinations of the commissioner pursuant to subdivision 2.

*Id.* at subd. 3(b). The procedure followed by the board is set forth in Minn. Code Agency R. § 5217 (effective Nov. 28, 1984). Under Minn.Stat. § 176.135 (1984), the commissioner has the authority to order expenses paid for the treatment of work-related injuries and the effects of such injuries:

> The employer shall furnish any * * * [medical treatment or supply] as may

reasonably be required at the time of the injury and any time thereafter to cure and relieve from the effects of the injury. * * * Orders of the commissioner with respect to this subdivision may be reviewed by the medical services review board * * *.

*Id.* at subd. 1.

Jackson maintains that these statutory provisions do not give the commissioner authority to determine the causal issue in her claim. She contends that the issue in her claim is primary liability—a legal issue that must be determined by a workers' compensation judge trained and experienced in the law, not by medical specialists. Whether the issue is characterized as one of primary liability or medical causation, the relator maintains that the result is the same and the commissioner's jurisdiction just as improper. Since nowhere in the statutes is the commissioner given the explicit authority to make primary liability or medical causation determinations, Jackson argues that the court should not read such jurisdiction into the statute. The responsibility of the commissioner and the medical review board is to monitor the quality, cost and quantity of the medical care of health care providers who treat injured employees. They are to watch for overcharging and unnecessary treatment, not to adjudicate the primary liability of the employer or decide the medical causal relationship between a present medical expense and an original work-related injury.[1]

The respondent, Red Owl, agrees with the relator that the commissioner and the board do not have the statutory authority to determine issues of primary liability, but may decide only issues concerning the quality, cost and quantity of medical care. However, they argue that Jackson's claim presents a question of medical causation, not primary legal liability and, since medical causation concerns the quality, cost and quantity of medical care, it is an issue within the jurisdiction of the commissioner.

The commissioner urges an even more expansive interpretation of Minn.Stat. § 176.103, arguing that the statute is broad enough to grant the commissioner authority to decide even primary liability and certainly clearly grants the commissioner authority to decide medical causation.

Primary liability in workers' compensation claims is the employer's liability for the original injury itself. 1 Larson, *Workmen's Compensation Law* § 13.11 (1985); *Wallace v. Judd Brown Const. Co.*, 269 Minn. 455, 131 N.W.2d 540 (1964); *Eide v. Whirlpool Seeger Corp.*, 260 Minn. 98, 109 N.W.2d 47 (1961). This threshold question is clearly to be determined by a workers' compensation judge under Minn.Stat. § 14.-50 (1984).[2] In primary liability issues, the question is whether the injury arose out of and in the course of employment. Medical causation is a concept distinct from primary liability:

> A distinction must be observed between causation rules affecting the primary injury * * * and causation rules that determine how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment. As to the primary

---

**1.** Jackson further maintains that the WCCA's present position is in contradiction to an earlier decision, *Brandon v. Metz Baking Co.*, 559–94–7786, slip op. (WCCA Nov. 1, 1984). In *Brandon,* the WCCA upheld the jurisdiction of a compensation judge to determine whether there is a causal relationship between an employee's earlier work-related injury and his subsequent psychiatric condition. *Brandon* deals with an attempt by an employer to cut off disability benefits. The employee in *Brandon* maintained that the psychological condition he had developed incapacitated him from working and necessitated the continued payment of disability benefits. *Brandon,* therefore, concerns a differ-

ent type of claim and is governed by a different statutory provision than in the present case, but the case does point out the confusion that now exists.

**2.** The decision of the Workers' Compensation Court of Appeals does not explicitly limit the commissioner's present authority to issues of medical causation. Indeed, respondents Red Owl and its insurers disagree with the decision to the extent that it could be read as vesting the commissioner with the authority to determine legal issues such as an employer's primary liability for an allegedly work-related injury.

injury, it has been shown that the "arising" test is a unique one quite unrelated to common-law concepts of legal cause, and it will be shown later that the employee's own contributory negligence is ordinarily not an intervening cause preventing initial compensability. But when the question is whether compensability should be extended to a subsequent injury or aggravation related in some way to the primary injury, the rules that come into play are essentially based upon the concepts of "direct and natural results," and of claimant's own conduct as an independent intervening cause.

Larson at § 13.11, *quoted in Wallace,* 269 Minn. at 459, 131 N.W.2d at 543–44. Medical causation is a distinct legal concept that concerns the connection between the primary injury and a later condition—"how far the range of compensable consequences is carried, once the primary injury is causally connected with the employment." *Wallace,* 459, 131 N.W.2d at 543; *see also Rohr v. Knutson Const. Co.,* 305 Minn. 26, 232 N.W.2d 233 (1975). According to Larson, "[t]he basic rule is that a subsequent injury, whether an aggravation of the original injury or a new and distinct injury, is compensable if it is a direct and natural result of a compensable primary injury." Larson at § 13.11, *quoted in Wallace,* 269 Minn. at 459, 131 N.W.2d at 544.

Jackson's claim concerns effects of an injury for which Red Owl and its insurers have admitted liability. This is not a case of primary liability. Instead, the issue is medical causation, for Jackson alleges that her shoulder disorder and her psychological problems are medically related to the original work-related injury. In other words, Jackson's claim is for medical expenses she maintains are necessary in treating her original work-related injury. Under a broad interpretation of the commissioner's statutory authority, the board would then determine whether the submitted expenses were necessary and appropriate and, in the course of their evaluation, necessarily determine whether the conditions treated were medically caused by the original injury. If the court were to adopt this inter-

pretation of the commissioner's authority, Jackson's claim would be properly within the jurisdiction of the commissioner.

The brief of the employer and insurer-respondent, Red Owl Stores, Inc., and Commercial Union Assurance Company, in its conclusion, states:

It is the position of the above-named respondent that all issues relative to the quality, cost and quantity of medical treatment, together with those medical issues relating to causation of medical expense to an admitted or judicially determined work-related injury, are properly handled by the Commissioner of the Department of Labor & Industry. If, in order to award those medical expenses, the Commissioner must make a determination that the employee has sustained a new injury causally related to the original injury, the authority of the Commissioner ceases and the matter should be referred back to the Office of Administrative Hearings for further determinations.

It is noteworthy that both the employee and the employer and its insurers agree that the commissioner's authority should be limited to the issues of necessity for treatment—the quality, cost, and quantity of medical treatment. The employer and its insurers, however, apparently include within these terms the issue of medical causation. Only the commissioner-intervenor argues for the broadest interpretation of the statute which gives the commissioner jurisdiction over both medical causation issues and primary liability issues.

■ We agree with the interpretation urged by relator in this case. While the broad interpretation of the statutory authority sought by the commissioner is possible in this case, we believe a narrower, more limited interpretation is a more logical result in trying to balance out all of the equities in the entire statutory scheme of the Workers' Compensation Act. We note that all compensation judges are now learned in the law, as are members of the Workers' Compensation Court of Appeals.

Questions of law are quite properly decided by those learned in the law who can understand court decisions and apply legal precedent. While medical experts can be of great help to a trier of fact, questions of law should not be left to be decided by those not learned in the law. Surely, if the legislature intended to vest in the commissioner the broad authority he seeks, it would have specifically done so without equivocation and not left such authority to be implied by this court.

■■■ We, therefore, find that, while the commissioner and the department can decide all issues relative to the quality, cost, and quantity of medical care, contested issues of primary liability and medical causation are to be decided by a compensation judge. If the Medical Services Review Board finds it necessary that there be a determination as to whether an injury is work related or whether medical expenses are related to an admitted or judicially determined work-related injury, it should not decide that issue unless the parties waive their objection or stipulate that the board may do so. Absent such a waiver or stipulation, the board must remand the case for trial by a compensation judge. If the board decides the issue intentionally or unintentionally in absence of an agreement by the parties, the decision of the board shall not be binding on either party and neither estoppel nor res judicata shall apply.

Reversed and remanded to the compensation judge for trial of the issue as to whether the medical expenses claimed here refer to a work-related injury.