Sandra KUROWSKI, Respondent,

v.

KITTSON MEMORIAL HOSPITAL and
St. Paul Companies, Relators.

No. C2–86–756.

Supreme Court of Minnesota.

Dec. 5, 1986.

Donald W. Anderson, Kenneth B. Huber,
Minneapolis, for relators.

Robert J. Brenner, Minneapolis, for respondent.

Considered and decided by the court en banc without oral argument.

YETKA, Justice.

The employer-relator, Kittson Memorial Hospital, and the insurer-relator, St. Paul Companies, appeal from a decision of the Workers' Compensation Court of Appeals reversing the denial of rehabilitation benefits to employee-respondent by the rehabilitation review panel. The Workers' Compensation Court of Appeals held that the employee's misconduct which caused her termination did not bar her from receiving rehabilitation benefits, contrary to the decision of the rehabilitation review panel. We affirm the Workers' Compensation Court of Appeals on this issue.

The employee, Sandra Kurowski, was born November 1, 1961. At the age of 14, the car in which she was riding was hit by a cement truck. As a result, Kurowski suffered a fractured pelvis. The surgery that followed left the employee with a left leg 1½ inches shorter than the right. Employee also developed scoliosis. As a result, employee has had difficulty walking long distances and sees an orthopedic surgeon, Dr. Robert Lindsay, about once a year.

Since her accident, Sandra Kurowski has had jobs as a potato picker, requiring her to lift briefly 50– to 100–pound sacks of potatoes, and also as a custodian, washing windows and floors. On January 18, 1981, Sandra Kurowski began working at Kittson Memorial Hospital as a nursing assistant.

Employee's duties included lifting patients when cleaning them or putting them to bed. In March 1983, while working at Kittson, employee hurt her lower back in the course of lifting a patient. Dr. Christopher Olson referred employee for treatment to a chiropractor, Jack Lundbohm. Employee stayed home from March 15 until March 27. After this, Dr. Lundbohm released her to return to work. From March 27 until August 30, 1983, employee continued to work full time at Kittson with normal duties. During this time, she saw Dr. Lundbohm three times a week for therapy, including ultrasound, electric muscle stimulus and back adjustment.

On August 30, employee again hurt her back trying to lift a patient into his wheelchair. This injury was worse than the previous one, causing pain to shoot down employee's legs. Employee reported her injury to her supervisor and left work. Dr. Lundbohm prescribed bed rest and hot and cold packs.

Dr. Lundbohm and Dr. Lindsay, whom employee saw in September, advised her against lifting more than 15 or 20 pounds. On September 23, Mr. Berg, Kittson Memorial Hospital administrator, advised employee, both personally and by letter, that she was still on active payroll and was expected at work on September 26. In its letter, the hospital agreed to respect employee's physical limitations.

Employee went back to work on September 26. Mr. Berg testified that he gave strict orders that employee should not be asked to lift objects over 15 pounds. Employee testified that, after the first few days, other members of the staff refused to help her cope and she was asked to lift 80– or 90–pound patients by herself.

Employee worked steadily from September 26 until October 31, though still feeling some back pain. On October 31, employee called in sick during the morning because of lower back pain, but was asked to come to work anyway because of a shortage of staff. Employee left work at 11:30 a.m. instead of the normal time of 3:15 p.m. because of her continued pain. Employee testified that, later in the day, her boyfriend invited her to a Halloween night dance. Though initially reluctant, employee did attend the dance, dancing once before retiring to sit by the wall. Afterwards, she went out to breakfast and came home at 3:00 a.m. The next day, November 1, was employee's birthday, which she had off.

On November 2, employee was terminated for misconduct; the reason stated was her fraudulent use of sick leave. Since being terminated, employee has unsuccessfully applied for unemployment benefits. Employee testified that she has applied for work as a motel receptionist or a typist at numerous businesses in her area. However, she made no record of these attempts.

On September 26, 1983, employee filed a request for workers' compensation rehabilitation benefits. A rehabilitation specialist conducted an administrative conference on January 4, 1984. At the conference, the insurer admitted primary liability for employee's injury though both the insurer and employer questioned the relationship of the injury to employee's disability. An order was issued on February 1, 1984, finding the employee eligible for benefits. Employer appealed this decision on February 21, 1984, challenging employee's right to any benefits. On July 18, 1984, Kittson Hospital had employee examined by Dr. Ben Clayburgh. In Dr. Clayburgh's opinion, employee's disability was not caused by injuries suffered at the hospital, but solely resulted from her previous car accident.

The appeal was heard before a rehabilitation review panel on October 11, 1984. Employer renewed its claim that employee was not eligible for rehabilitation, but also asserted, based on Dr. Clayburgh's report, that employer was not liable for employee's disability and that the rehabilitation review panel did not have the jurisdiction to resolve a question of primary liability. The panel denied employer's request to dismiss the action until a finding of liability had been made.

In its conclusions of law, the panel held that employee was ineligible for rehabilitation benefits based on the panel's factual findings that employee could have worked at her position at Kittson, but had been properly terminated for misconduct. Neither the panel's factual findings nor its legal conclusions addressed the employer's jurisdictional questions, and employer's liability is simply assumed. However, in its memorandum of opinion, the panel stated that employer and insurer stipulated that the injury was work related. The panel then noted medical evidence that the injury caused employee's disability.

Employee appealed this decision to the Workers' Compensation Court of Appeals. Before the WCCA, employer renewed its argument that the rehabilitation review panel had no jurisdiction to decide issues of primary liability. The court of appeals held against employer, reversing the decision of the rehabilitation review panel. The court's opinion did not address employer's jurisdictional argument. However, one concurring opinion held that the employer had waived this argument by not noting it on appeal. In a separate concurrence, another judge held the jurisdictional question irrelevant since employer had admitted liability below.

While the parties discuss whether employee is entitled to rehabilitation training, the real issue presented to us appears to be: Does a rehabilitation review panel have jurisdiction to determine medical causation? If not, must the case be remanded to a compensation judge or to the Workers' Compensation Court of Appeals?

The essential issue raised is whether a rehabilitation panel has jurisdiction to determine medical causation. We hold that it does not. That holding is mandated by our decision in *Jackson v. Red Owl Stores, Inc.*, 375 N.W.2d 13 (Minn.1985). In *Jackson*, this court held that the Medical Services Board, a body similar in composition to the rehabilitation review panel and operating by identical procedural rules should refer causation questions to a compensation judge. We said:

> If the Medical Services Review Board finds it necessary that there be a determination as to whether an injury is work related or whether medical expenses are related to an admitted or judicially determined work-related injury, it should not decide that issue unless the parties waive their objection or stipulate that the board may do so.

*Id.* at 19.

Admittedly, the statute authorizing rehabilitation services uses different language

than that applying to the Medical Services Board and indicates that the commissioner has the sole authority to determine eligibility for rehabilitation services. Minn.Stat. § 176.102, subd. 6a (1984). It goes on to say that those determinations shall not be made by a compensation judge, but may be appealed to the rehabilitation review panel. In contrast, the statute setting up the Medical Services Board did not make the commissioner responsible for determining eligibility for medical services. However, the principle involved in both cases is identical. The point is that neither medical services nor rehabilitation is available until primary liability and medical causation are established. The reasons why neither the Medical Services Board nor the rehabilitation panel should determine these issues remain the same, namely:

1. Lay persons should not be determining legal issues involving the application of legal precedent;

2. Determining causation is a substantially different task than deciding whether one is a fit candidate for medical services or for rehabilitation training; and

3. The law would be inconsistent were we to hold otherwise since the question of whether a work-related injury caused particular medical problems is the same whether the result of finding liability is an award of rehabilitation or medical services.

 Accordingly, we hold that a rehabilitation review panel cannot determine questions of primary liability or medical causation. When the issue was first raised before the panel in this case, the panel should have referred the matter immediately to a compensation judge for determination. That should be its practice in the future.

The rehabilitation review panel found, as fact, that employee had sustained a work-related back injury and that a chiropractor and an orthopedist who had treated employee since her 1975 accident had imposed weight restrictions on her employment. The panel made no finding, however, that either the imposition of weight limitations or employee's inability to perform her work as a nurse's aide without weight restrictions was attributable to her work-related injury. Although it is apparent from the rehabilitation review panel's memorandum of rationale that the panel was of the opinion that such a causal connection existed, that determination was not reflected in the findings of fact. The review panel then concluded that employee was not eligible for rehabilitation benefits.

The WCCA simply adopted the review panel's findings of fact without making any additional findings of its own. Apparently assuming the existence of medical causation between the employee's work-related back injury and the imposition of weight lifting restrictions, the WCCA reversed the review panel's conclusion and concluded that employee was entitled to rehabilitation.

 By adopting the review panel's finding that employee had lost more than 30 days of worktime as a result of her work-related injury, the WCCA affirmed the determination that employee had satisfied the eligibility requirements of Minn.Stat. § 176.102, subd. 4 (1984). Furthermore, employer had waived that issue by failing to contest it. The WCCA took the position that the only issue before it was whether a denial of benefits could be justified by the alleged misconduct of the employee. The WCCA then went on to hold that the alleged misconduct in this case could not be used as an artifice to negate the required payments under the Workers' Compensation Act. The WCCA found that, while the act of employee was not prudent, there was no evidence in this case that employee went to the dance with the intent of getting herself fired from her job, a job which she liked and could do if she received the cooperation she had been promised and did not have to lift excessive weights. The court also did not find that her activity at the dance was such as would tend to aggravate her disability. The record adequately supports this determination, and we concur in it.

The WCCA could not, however, ignore the jurisdictional issue raised by employer as that issue related to medical causation. From the outset, employer contested the jurisdiction of the rehabilitation consultant and the rehabilitation review panel to determine either primary liability or medical causation, and although employer conceded primary liability for employee's work-related injury, it consistently denied that employee's inability to perform her work without weight restrictions was the result of her work-related injury. Inasmuch as employer had prevailed before the review panel, it could hardly be said to have waived that issue by failing to appeal. Furthermore, since the review panel had made no finding of fact with respect to causal relationship, there was nothing for employer to attack. A remand is thus necessary on this issue.

There is a difference between primary liability for an injury and medical causation between that injury and ongoing disability. There has never been a determination of medical causation in this case, and although the findings suggest the existence of medical reports from various physicians and chiropractors, the record before us contains only one report which does not even address the issue of causation.

Accordingly, we remand for hearing and determination by a worker's compensation judge as to whether the employee's inability to perform the work of a nurse's aide is causally related to her work-related back injury.

Affirmed in part and reversed in part.