Julie GUTZ, Relator,

Steve Keefe, Commissioner of the Department of Labor and Industry, Intervenor, Relator,

v.

HONEYWELL, INC., Self-Insured, Respondent.

No. CX–86–1265.

Supreme Court of Minnesota.

Jan. 30, 1987.

John J. Horvei, David R. Vail, Roseville, Harold W. Schultz, III, St. Paul, for relator.

Carl J. Sommerer, Minneapolis, for respondent.

SIMONETT, Justice.

The Rehabilitation Review Panel denied the employee retraining benefits, and the Workers' Compensation Court of Appeals (WCCA) affirmed. The employee challenges the review panel's findings; she also challenges the panel's jurisdiction, the constitutionality of the procedure for hearing rehabilitation claims, and the applicable governing statutes for rehabilitation eligibility and benefits. We affirm.

Julie Gutz began work at Honeywell in 1961, eventually achieving the position of electronics technician. On February 19, 1976, she sustained a work-related injury requiring a cervical laminectomy and began receiving temporary total disability benefits. In late 1979, Honeywell stopped paying benefits and terminated her employment relationship with Honeywell, claiming Ms. Gutz was self-employed at a small resort she owned in northern Minnesota. At a hearing in June 1980 before Compensation Judge Charles Reischel, Julie Gutz was found to be no longer temporarily totally disabled after October 1979.[1]

In December 1981, pursuant to the advice of a state rehabilitation counselor, Julie Gutz commenced a 2-year course in accounting at Rainy River Community College in International Falls. On August 18, 1982, she filed a rehabilitation certification petition with the Department of Labor and Industry, to which Honeywell promptly objected. The matter came on for administrative conference before the commissioner's representative, Robert Brezinski, in December 1983, and he issued his order on January 17, 1984, granting Julie Gutz retraining benefits.[2] Honeywell appealed this order to the Rehabilitation Review Panel.

The hearing before the review panel was held in September 1984. (Three days earlier Gutz had returned to work at Honeywell, where, apparently, she has since continued to be employed.) At the panel hearing, the entire file of the prior 1980 hearing before Judge Reischel was received in evidence, as well as the testimony of various doctors and rehabilitation specialists, plus correspondence and medical reports. At

---

1. The WCCA later vacated Judge Reischel's findings concerning the extent of Ms. Gutz' permanent partial disability, allowing the employee to press her claim of 35% permanent partial disability of the back, less 15% previously paid. That claim is pending in a separate proceeding.

2. The problems created by seemingly overlapping jurisdiction and ever-changing statutory enactments are illustrated by the procedural history of Ms. Gutz' rehabilitation claim. In June 1980, Julie Gutz applied to Robert Congrave, a counselor with the Division of Vocational Rehabilitation, for rehabilitation services. Congrave collected Ms. Gutz' medical records and arranged for a medical examination and evaluation. By October 1980, Congrave determined Ms. Gutz was eligible for retraining. She left, however, for Arizona for the winter, as apparently was her custom each winter after her injury, and she did not return to Minnesota until the fall of 1981. Ms. Gutz started school in December 1981, but Congrave said he would not certify her for retraining until she had proven she could do the schoolwork. On July 13, 1982, Congrave certified Gutz for retraining. On August 18, 1982, a certification petition was filed with the Department of Labor and Industry. On August 27, 1982, Honeywell promptly filed its objection to the petition. The matter was pretried by telephone conference on February 28, 1983, at which time the employee amended her petition to add a claim for further disability benefits. Trial was set for September 7, 1983, before Compensation Judge Charles Reischel. Thereafter, because of the intervening 1983 amendments to the rehabilitation law, Judge Reischel ruled he was without jurisdiction to hear the rehabilitation claim and referred the matter to the Department of Labor and Industry. The rehabilitation petition was finally heard by Brezinski, the commissioner's representative, on December 19, 1983.

While all this was going on, Ms. Gutz continued with her schooling, graduating in June 1984. Except for her first quarter, apparently DVR has paid the expenses of tuition and books for Ms. Gutz' schooling. Ms. Gutz, of course, seeks benefits for her period of retraining, and DVR is interested in reimbursement from Honeywell for its outlay.

the hearing, Ms. Gutz testified that her physical condition had remained essentially the same since her 1976 injury and that she was unable to engage in any sustained activity involving use of her left arm and back. The doctors agreed Ms. Gutz had neck disability ranging from 20% to 35%, but they disagreed on the need for retraining. The experts, who were deposed in 1980 and who viewed a surveillance film of Gutz working at her resort in May 1980, agreed with the compensation judge that Gutz' neck and back injury did not impair her physical activity. Thus, after viewing the film, Dr. Nancy Crewe, a counseling psychologist, reversed her opinion that Gutz was incapable of working and stated that Gutz could have worked as an electronics technician. She further stated that the description of physical limitations Gutz gave in her office were so inconsistent with the actual activities shown in the film that Gutz had to have been, at least in part, consciously choosing to act pained. Dr. Crewe's opinion was "no longer that she's incapacitated by emotional problems, but that she has chosen not to work." Dr. David Florence, an orthopedist, gave much the same testimony, stating that the functional overlay was conscious. Those experts who were deposed in 1983 and did not see the film testified that Gutz was an appropriate candidate for retraining based on her objective medical condition and the symptoms she described.

In September 1985, the review panel issued its decision finding Julie Gutz was ineligible for rehabilitation services because she was not precluded from her pre-injury occupation and had not suffered a decrease in employability as a result of the 1976 injury. In June 1986, the Workers' Compensation Court of Appeals (3 to 2) affirmed. By certiorari, the employee now comes here.

The issues raised by the employee are: (1) Does the Rehabilitation Review Panel have jurisdiction to decide the issues raised by the employee's claim for retraining benefits? (2) What is the Workers' Compensa-

tion Court of Appeals' standard of review of a panel decision? (3) Is it a denial of constitutional due process for an employee's retraining claim not to be heard de novo by a decisionmaker learned in the law? (4) Does the rehabilitation law in effect at the time of injury, or a subsequent version of the law, govern the substantive merits of the retraining claim? and (5) Are the findings and order of the review panel, affirmed by the WCCA, manifestly contrary to the evidence?

## I.

The rehabilitation provisions of the Workers' Compensation Act are set out in Minn.Stat. § 176.102 (1984). Subdivision 6(a), as amended in 1983, provides that "The commissioner has the sole authority under this chapter to determine eligibility for rehabilitation services * * * and make other rehabilitation determinations * * *." Furthermore, "[t]hese determinations shall not be made by a compensation judge but may be appealed to the rehabilitation review panel * * *."

Notwithstanding this quite inclusive statutory authority, employee Gutz contends the commissioner and the review panel lacked jurisdiction to consider her claim. She contends the panel lacks authority to decide issues of primary liability and medical causation and that her rehabilitation claim includes an underlying issue of medical causation which only a compensation judge may determine. We agree with her first contention, but not her second.

In *Jackson v. Red Owl Stores, Inc.*, 375 N.W.2d 13 (Minn.1985), in considering the jurisdiction of the Medical Services Review Board, we construed the language of the statute to exclude issues of primary liability and medical causation from the board's deliberative powers. Then, in *Kurowski v. Kittson Memorial Hospital*, 396 N.W.2d 827 (Minn.1986), we construed the broader statutory grant of authority to the Rehabilitation Review Panel to, nevertheless, also exclude issues of primary liability and

medical causation.[3] Now, in this case, Julie Gutz claims that whether she is unable to do the work of an electronics technician because of her job-related injury is also a question of "medical causation."

■ Issues of primary liability are reserved to the compensation judge. Primary liability refers to the employer's liability for the primary (original) injury; included within primary liability is an issue of causation with particular legal overtones, namely, whether the primary injury "arises out of" the employment. If, subsequent to a primary injury, an employee claims a further, compensable injury or condition, another kind of causation issue arises. The employee may claim additional compensable disability as a result of complications or a progression of the primary injury. Or the employee may claim an aggravation of the primary injury by some subsequent incident. In either of these latter two cases, the legal test of causation is not whether the subsequent condition arises out of the employment, but whether the subsequent condition is a direct and natural result of the primary injury. *Jackson*, 375 N.W.2d at 18; *Wallace v. Judd Brown Construction Co.*, 269 Minn. 455, 131 N.W.2d 540 (1964). In *Jackson*, we labeled this second kind of causation as "medical causation," which is also only for the compensation judge to determine. Perhaps it would be more accurate to identify this kind of jurisdictional causation as "subsequent liability causation."

In *Jackson*, the employee sought medical expenses for a rheumatoid shoulder disorder and psychological problems which had developed sometime after her job-related neck and back injury. In other words, the employee was claiming a subsequent condition or injury, consisting of complications of the primary injury, and we held that before the review board could award medical expenses, the employer's underlying liability for the subsequent condition, which presented a "medical causation issue," had first to be decided by a compensation judge. In *Kurowski*, the employer conceded a job-related primary injury but claimed the disability was caused by a prior nonjob-related auto accident, and again we held this was a "medical causation issue" for the compensation judge. To put it another way, both cases dealt with "subsequent liability causation," which is outside the jurisdiction of either the medical services review board or the rehabilitation review panel.

■ A rehabilitation review panel determines only if the effects of an established compensable injury (either primary or subsequent) has impaired an employee's ability to do the kind of work she did before and whether retraining would reduce any decline in employability. So, in this case, Julie Gutz came before the panel with an established, compensable neck and back injury. While Julie Gutz might have a claim for a subsequent compensable condition (see footnote 1), in this rehabilitation proceeding she was not claiming, nor could she, any new compensable condition. Consequently, no issue of primary liability or subsequent liability causation was before the panel. Instead, the review panel only considered the employee's claim for rehabilitation for her established neck and back injury. In doing so, the panel evaluated the employee's alleged physical limitations together with her educational attainments and aptitudes and the nature of the job market. In considering the extent of Julie Gutz' physical limitations, the panel necessarily reviewed the doctors' testimony on the effects of her neck and back injury, but

---

**3.** We said in *Kurowski* that neither the Medical Services Board nor a rehabilitation panel should determine issues of primary liability and medical causation because:

"1. Lay persons should not be determining legal issues involving the application of legal precedent;

"2. Determining causation is a substantially different task than deciding whether one is a fit candidate for medical services or for rehabilitation training; and

"3. The law would be inconsistent were we to hold otherwise since the question of whether a work-related injury caused particular medical problems is the same whether the result of finding liability is an award of rehabilitation or medical services."

only within the confines of the already established injury, not to establish a new, subsequent, compensable condition. We hold that the review panel acted within its jurisdiction in deciding the Gutz rehabilitation petition.

## II.

The employee contends the Workers' Compensation Court of Appeals is required by statute to review panel decisions de novo; and that any other standard of review denies a party constitutional due process. We hold that the WCCA does not have de novo review and that this is not a violation of due process.

■ 1. Minn.Stat. § 176.102, subd. 6 (1984), says: "The decision of the panel may be appealed to the workers' compensation court of appeals in the same manner as other matters appealed to the court." We construe the phrase "in the same manner" to mean that the court of appeals' review of the panel's decisions is the same as its review of a decision by a compensation judge. *Cf. State v. Finnegan*, 188 Minn. 54, 63, 246 N.W. 521, 525 (1933) (the word "manner" is comprehensive and not necessarily restricted to mere form). In other words, the WCCA reviews the findings and order of the review panel to determine if supported by substantial evidence; if not, the WCCA may then, but only then, substitute its own findings. *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). Not only does this interpretation give consistency to the WCCA's role as an appellate body in the workers' compensation system, but it furthers the legislative intent to reduce the number of appeals with resultant savings in time and cost to the system. *Id.* at 59. Moreover, a review panel is a kind of administrative agency acting in a quasi-judicial manner where the standard of review traditionally has been under the substantial evidence rule. *See, e.g., Taylor v. Beltrami Electric Cooperative*, 319 N.W.2d 52, 56 (Minn.1982).

If, as we now hold, the WCCA does not conduct a de novo review of a review panel's decision, then, argues the employee,

the statutory scheme is unconstitutional as a denial of equal protection and due process. We did not reach this issue in *Kurowski*.

At no stage of the deliberative process, as the employee points out, is there a de novo determination of the employee's rehabilitation claim by persons learned in the law. The initial decision is made by the commissioner or his representative. The appeal to the review panel is before representatives of labor, industry, and the medical, chiropractic and rehabilitation professions, none of whom are law-trained. Minn.Stat. § 176.102, subd. 3 (1984). Only before the court of appeals is the rehabilitation claim considered by law-trained judges, but the court's role is limited by the substantial evidence standard. The result, claims the employee, is that there is no assurance a decision will be made on competent evidence, on a proper record, and in conformance with law.

Also, the employee points out, Minn.Stat. § 176.102, subd. 13 (1984), provides that workers who are subject to discontinuance of rehabilitation benefits because of non-cooperation in the program are entitled, after an administrative conference, to challenge the discontinuance in a de novo hearing before a compensation judge. In other words, workers challenging discontinuance of rehabilitation benefits have de novo review by a judge learned in the law, while those seeking benefits do not. Julie Gutz claims this anomaly has no rational basis and denies equal protection. We cannot say a rational basis is lacking. The legislature may have felt the need to reduce the amount of formal litigation in the workers' compensation system was best served by having lay experts handle rehabilitation eligibility, leaving the issues of discontinuance, which may involve different legal nuances, to compensation judges.

The employee next argues the statutory scheme violates procedural due process because the employee seeking rehabilitation benefits is never provided a de novo hearing before a body learned in the law. Under *Mathews v. Eldridge*, 424 U.S. 319, 335,

96 S.Ct. 893, 903, 47 L.Ed.2d 18 (1976), the test of constitutional due process requires balancing the private interest affected, the hazards of an erroneous deprivation of that interest through the procedures used, and the government's interest, including fiscal and administrative concerns, in the procedure employed and in possible additional procedural safeguards.

■ Here, significantly, the review panel does not decide primary liability and subsequent liability causation but limits itself to rehabilitation eligibility. The panel members, presumably, have practical and professional expertise in rehabilitation matters, which matters ordinarily do not involve legal issues. (The panel can, of course, consult legal counsel if necessary.) The administrative panel procedure is designed to provide a relatively informal method of processing rehabilitation claims by knowledgeable persons in a prompt manner. *Cf.* Minn.Stat. § 176.411 (1984) (the compensation judge, though required to decide on competent evidence, "is bound neither by the common law or statutory rules of evidence nor by technical or formal rules of pleading or procedure"). Procedural safeguards include the right to counsel, notice, the right to cross-examine, and the making of a record. We would expect the WCCA, in reviewing the findings of a review panel under the substantial evidence standard, to have in mind it is dealing with the deliberations of nonlaw-trained persons; further, it should be noted, the procedure does allow for vacation of inadequately supported findings by the WCCA and substitution of the WCCA's own findings in that event. While we can understand parties would prefer a law-trained decisionmaker, we cannot say the statutory scheme devised here denies due process.

**4.** As a practical matter, it does not matter whether the 1976 law or the 1983 law applies because they both present essentially the same eligibility requirements. Under Minn.Rule 5220.0100 (1984), promulgated by the commissioner pursuant to the 1983 law, an employee is qualified for rehabilitation services—

[W]ho, because of the effects of a work-related injury or disease, whether or not combined with the effects of a prior injury or disability:

*Cf. Heddan v. Dirkswager,* 336 N.W.2d 54 (Minn.1983).

## III.

The employee next asks which statutory eligibility test for rehabilitation benefits governs: the statute in effect in 1976, at the time of Ms. Gutz' injury? or the 1979 statute, in effect when Ms. Gutz was certified by the DVR counselor for retraining in July 1982? or the 1983 statute, in effect when the commission's representative issued his order granting rehabilitation benefits?

■ In *Solberg v. FMC Corp.,* 325 N.W.2d 807, 808 (Minn.1982), dealing with the applicability of the 1979 rehabilitation law effective October 1, 1979, we utilized the principle that the rehabilitation law in effect on the date of injury determines the rule to be used in deciding whether an employee is eligible for retraining benefits. *See also Leahy v. St. Mary's Hospital,* 339 N.W.2d 265, 267 (Minn.1983). Section 176.-102 was amended in 1983 and states that the section "is applicable to all employees injured prior to or on and after October 1, 1979, except for those provisions which affect an employee's monetary benefits." Putting to one side for the moment the matter of the employee's monetary benefits, it is clear that the statutory eligibility test enacted by the legislature in 1983 is intended to be retroactively applied to cases where the date of injury is prior to the 1983 amendment, and, indeed, prior to October 1, 1979, the effective date of the 1979 law. In other words, we hold that Ms. Gutz, although injured in 1976, has her eligibility for rehabilitation benefits determined by the 1983 test for eligibility.[4]

A. is permanently precluded or is likely to be precluded from engaging in the usual and customary occupation or position in which the individual was engaged at the time of injury; and

B. can reasonably be expected to benefit from rehabilitation services which could significantly reduce or eliminate the decrease in employability.

2. The next issue of statutory construction is, if Julie Gutz satisfies the eligibility test and is entitled to rehabilitation benefits, what is the amount of the benefits to be awarded? Are the benefits to be calculated by the law as it was in 1976? or under the 1979 or 1983 versions? The employee argues strenuously that the "vesting" test adopted in *Solberg,* 325 N.W.2d at 808, and *Sherman v. Whirlpool Corp.,* 386 N.W.2d 221, 224 (Minn.1986), should be abandoned and that, indeed, the legislature has so indicated. We do not reach this issue, however, unless it is first determined that Ms. Gutz has met the eligibility requirements for benefits.

## IV.

■ The review panel found that the employee's 1976 injury did not preclude her from engaging in her preinjury occupation of electronics technician and that Julie Gutz had no reduction in employability as a result of her 1976 injury. These findings are based on the testimony of experts who so testified, and while other experts (who did not see the film of Julie Gutz working at her resort) testified differently, it was for the panel to choose between the conflicting testimony. The Workers' Compensation Court of Appeals ruled the panel's findings were supported by substantial evidence. On appeal to this court, we hold those findings as affirmed are not manifestly contrary to the evidence, *Hengemuhle v. Long Prairie Jaycees,* 358 N.W.2d 54, 61 (Minn.1984), and we affirm.

Consequently, we need not reach the other issues raised.

Affirmed.

Under both Minn.Stat. § 176.101, subd. 7 (1975), and the 1983 rule, the review panel must find (1) the injury precludes or is likely to preclude the employee from engaging in the employee's former occupation, and (b) retraining would significantly reduce, prevent, or eliminate the decrease in employability.