## HELMER B. CHRISTENSON v. PEDERSEN BROTHERS AND ANOTHER.

130 N. W. (2d) 234.

August 7, 1964—No. 39,261.

*Tyrrell, Jardine, Logan & O'Brien* and *Raymond W. Fitch,* for relators.

*Gerald B. Forrette,* for respondent.

MURPHY, JUSTICE.

Certiorari to review an order of the Industrial Commission granting a claim for workmen's compensation benefits as a result of a heart condition found to have been related to employee's work.

Employee had been employed as a carpenter and construction worker for most of his adult life. At the time of his alleged disability, he was 57 years of age. His health prior to that time had been without incident, except for a choking attack which occurred one morning in April 1956. There was evidence that an electrocardiograph test taken at that time did not definitely indicate coronary disease. From May 1,

1956, to May 22, 1961, he was apparently without symptoms or complaints. In May 1961 he was working for the employer relator in the construction of a bridge near Fergus Falls. Since the place of work is about 109 miles from Montevideo, where the employee lived, he and his coworkers rented an apartment at Fergus Falls for use during the work week.

On May 17, 1961, he was assigned to work leveling roadbed cement being poured on a bridge. He worked from 5 a. m. until 9 p. m. with a half hour for lunch. The following day he worked from 7 a. m. until 8 p. m. finishing the curb along one side of the bridge. This work involved use of a steel trowel while on hands and knees. On the following Friday he did the same work from 7:30 a. m. until 8 p. m., and then returned to his home for the weekend. He resumed his work the following Monday, May 22, when he was assigned to a job of chipping stones out of the roadbed with a chisel and a 4-pound hammer. This work was done on hands and knees. At about 2:30 p. m. he suffered a severe headache in the area of the left temple and stopped work for half an hour. At about 3:30 the headache returned and he again had to rest for half an hour. At about 5 p. m. the headache was more severe involving a "clawing" sensation down the left side of the face. This illness lasted until about 8 p. m. He went to his room and laid down on his bed. About 10:30 p. m. a severe pain, which he compared to a blow with a plank, developed in his left chest, and he sat up in a chair all night.

He reported to work the next morning, but was taken to a doctor in Fergus Falls who advised that he be hospitalized. Employee returned home to Montevideo where he was placed in a hospital under the care of Dr. Norman Hagberg. He remained in the hospital until June 15, 1961. Dr. Hagberg continued to treat employee up to the time of the hearing before the referee for the Industrial Commission on August 22, 1962.

Dr. Hagberg diagnosed employee's condition as acute coronary thrombosis. He expressed the view that on the afternoon of May 22 there was a partial occlusion causing the headaches, with the complete occlusion occurring at the time of the severe pain in the chest at

about 10:30 p. m. He testified that the underlying cause of the thrombosis was atherosclerosis, but that the actual occlusion was work-related in that the stress of his work increased the chances of some blockage occurring in the diseased blood vessels. Dr. Hagberg was of the opinion that the disability was permanent.

Dr. Moses Barron, an internist, was also called as a witness for employee. He expressed the view that employee's work was sufficient to initiate the coronary thrombosis. As a result of a thorough and searching cross-examination, however, the effect of his testimony appears to have been cancelled out and we gather from the record that he did not disagree with Dr. William Hedrick, the internist who testified in behalf of the relators. It was Dr. Hedrick's view that the attack of May 22 was not work-related. He was of the opinion that the employee suffered a condition of coronary atherosclerosis, which was a progressive thing developing over many years, and that it was "a question of his narrowing of the coronary arteries catching up with this individual at a certain time and this is something that would occur no matter what type of work he was doing."

The referee found that employee sustained an injury arising out of and in the course of his employment; that the resulting disability continued up to the time of the hearing; and that employee would require future medical treatment. The Industrial Commission affirmed in a brief decision, the pertinent part of which states:

"The Commission having considered the pleadings in the case, transcript of the evidence taken before the referee, the exhibits admitted in evidence, oral arguments and briefs of counsel, and all of the files, records and proceedings herein, and the Commission being of the opinion that the findings and determination of the referee are in accord with the evidence and the law in the case;

"Now, THEREFORE, IT IS CONSIDERED AND DETERMINED that the findings and determination of Referee George Hottinger, dated November 7, 1962, and filed November 8, 1962, be and the same hereby are in all things affirmed."

The Industrial Commission also issued a memorandum, as follows:

"The issue is whether a disabling heart condition suffered by the employee, a 59-year-old carpenter, is in causal relation to his work. The diagnosis was a coronary thrombosis. The employee worked overtime in adverse weather conditions during 3 days; did not work the next 2 days, a weekend; and chipped curbing with a 4-lb. hammer, a strenuous activity in an awkward position, all of a Monday and that evening suffered the heart attack. As in all cases of this kind, medical opinion is in conflict as to causal relationship. The attending physician and an internist testified that the work performed initiated the thrombosis and caused the disablement. Contrary opinion was voiced by another internist.

"We conclude that the weight of the evidence supports the findings by the referee and his award of compensation and medical benefits is affirmed."

■ Relators first contend that the findings of fact are not supported by the evidence. They assert that the Industrial Commission ignored the testimony given on cross-examination by the internist who testified in behalf of the employee, which testimony actually supports the claim of the relators that the condition complained of was not work-related. An examination of the record, however, satisfies us that there was sufficient evidence to sustain the findings of the referee which were affirmed by the commission. Employee was engaged in strenuous work when the first symptoms of the impending heart attack, which apparently took place that evening, developed. Under Minn. St. 176.021 it was not necessary to establish evidence of unusual strenuous activity prior to the attack. Peterson v. The Ruberoid Co. 261 Minn. 497, 113 N. W. (2d) 85.

We are presented here with a situation common in workmen's compensation cases. Conflicts in the testimony as to causation and duration of the disability are for the commission to determine. Sufficient evidence is found in the record from the testimony of Dr. Hagberg, the attending physician, to support the commission's determination on this point. In Rosvold v. Independent Consol. School Dist. No. 102, 251 Minn. 297, 300, 87 N. W. (2d) 646, 649, we said:

"* * * An employee dies from some disease, such as cancer, stroke,

coronary thrombosis, as here, or some other disease, having had experiences in the course of his work which it is claimed were the cause of his death. Competent medical experts are called in to give their opinions as to whether there is causal connection between these work experiences and his death. Those called by petitioner will testify that there is such causal connection, while those called by the employer will say that there is no such connection. It does not follow that their opinions are colored or influenced by reason of the fact that they are called by the one side or the other. In many fields of medicine there is still much room for disagreement among experts, but the number of such fields is becoming less and less. As medical science progresses, it is expected that more and more conflicts will be resolved. But while these disagreements or conflicts are still going on, finders of fact and courts generally must make decisions.

"In Golob v. Buckingham Hotel, 244 Minn. 301, 304, 69 N. W. (2d) 636, 639, where we had occasion to discuss this problem, we said:

" '* * * It would be of no value to set forth the opposing views of the medical experts. It is sufficient to say that it is apparent that in this field of medicine, as well as others, even those specializing in the field do not agree on the question whether trauma or exertion can cause the formation of a blood clot and the resulting thrombosis. * * * until the time comes when medical knowledge has progressed to such a point that experts in the field of medicine can agree, causal relation in determining compensable injury or disease will have to remain in the province of the trier of fact.' "

■ It is next contended that the memorandum of the commission is inaccurate and contradictory in that it indicates that the internist who testified for employee supported his claim that the thrombosis was work-related. It must be conceded that that particular statement in the memorandum is not wholly accurate. We think the point thus raised may be disposed of by noting that regardless of what views may be expressed in the memorandum the fact remains that the findings of the referee, which are adopted by the commission in its decision, are adequate and clear. The memorandum is not needed for clarification and

may not be used, as relators are attempting to do, to impeach or overcome the commission's findings. We held in Wheeler v. Wheeler, 184 Minn. 538, 540, 239 N. W. 253, 254, under circumstances where the record supported the findings, that a memorandum attached to a decision of the Industrial Commission may not be resorted to to show that its justifiable findings are not based upon a tenable theory. We there said, "The findings will be sustained when the evidence is sufficient for that purpose." See, also, McMillen v. Meyer, 246 Minn. 132, 74 N. W. (2d) 393; Bicanic v. J. C. Campbell Co. 220 Minn. 107, 19 N. W. (2d) 7; Kleidon v. Glascock, 215 Minn. 417, 10 N. W. (2d) 394.

The other points raised by relators do not require discussion.

Respondent is allowed the sum of $250 for attorney's fees in addition to his costs and disbursements.

Affirmed.