BERYL M. VILLEBRUN v. EVERETT J. FRYREAR, d.b.a. CONTRACT HAULING AND UNLOADING, AND ANOTHER.

183 N. W. (2d) 279.

December 4, 1970—No. 42168.

*William F. Brooks, Jr.,* and *Chestnut, Jones, Brooks, Kennedy & Burkard,* for relator.

*C. A. Stark* and *Ronald O. W. Ylitalo,* for respondents.

Heard before Knutson, C. J., and Rogosheske, Peterson, Kelly, and Rosengren, JJ.

KELLY, JUSTICE.

Certiorari to review a decision of the Workmen's Compensation Commission denying death benefits to an employee's wife.

The issue raised on review is whether there is substantial evidence to support the decision of the Workmen's Compensation Commission that the employee's death did not arise out of and in the course of employment within the meaning of Minn. St. 176.021, subd. 1.

Decedent, Raymond A. Villebrun, worked on a piecework basis and was ordinarily employed Monday through Friday, but only if work was available. Villebrun missed work on both Monday and Tuesday preceding his death. He occasionally worked on Saturday. Decedent worked Friday with a coworker, Dennis St. Clair, unloading a boxcar. They both left early in the afternoon without completing the job, planning on returning the next day, a Saturday, to finish the job. The boxcar was a small one and could have been unloaded in one day, and employer expected the boxcar to be unloaded on Friday. On Friday night the manager of the lumber yard called the employer and asked him if the unloading of the boxcar could be completed on Saturday. On Saturday morning the employer called the employee, asked him if he was going to finish the boxcar, and told him to pick up St. Clair and take him to the job. He did not ask Villebrun to take St. Clair home. When St. Clair and Villebrun worked together, Villebrun usually drove him to and from work. On Saturday morning Villebrun not only picked up St. Clair, but also picked up another worker, Franklin Warren, without the employer's knowl-

edge. Employee and his coworkers finished unloading the boxcar at approximately 11:50 a. m. However, Villebrun did not do too much work and was not around much that morning. Warren thought he had been away playing pool. Another witness observed that Villebrun had been drinking. Villebrun and St. Clair had been paid on Friday for the work they were doing on Saturday. Warren was not paid and expected to be paid by Villebrun or St. Clair.

After unloading the boxcar, employee and his two coworkers went to a bar which was not on the most direct route to his home. While there, Villebrun played pool and consumed two or three double shots of whiskey. After 2 hours at the bar, employee resumed his homeward drive and in the course thereof engaged in a race on University Avenue, reaching speeds up to 65 miles per hour.

There is evidence from which it could be inferred that the employee's injury and subsequent death arose from the race if the testimony of St. Clair as a whole together with the testimony of an investigating officer and the overall testimony of Warren is taken into account. It is obvious that the speed engendered by the race continued to be excessive even though that speed may have diminished. And there can be no question but that excessive speed was in turn the prime cause of the accident.

■ The scope of our review of decisions of the Workmen's Compensation Commission is to determine if there is credible evidence upon which its findings may be based.[1]

As pointed out in Jonas v. Lillyblad, 272 Minn. 299, 137 N. W. (2d) 370, the general rule is that an employee is not covered while going to and from work unless he is on a "special mission" or "errand" or is performing "emergency work." It is clear that the employee here was not performing emergency work in view

---

[1] The terms "substantial evidence" and "credible evidence" are used interchangeably here, as they were in McDonald v. St. Paul Fire & Marine Ins. Co. 288 Minn. 452, 183 N. W. (2d) 276.

of the employer's testimony that if no one had been available to work on Saturday, then the lumber company would have had to wait. The only consequence was that the lumber company would have had to pay demurrage on the railroad car. Nor did Villebrun seem to regard it as emergency work since he didn't do much work that morning.

In Youngberg v. The Donlin Co. 264 Minn. 421, 425, 119 N. W. (2d) 746, 749, this court stated:

"From an examination of the authorities which discuss the so-called special errand rule it appears that it has been applied where (a) there is an express or implied request that the service be performed after working hours by an employee who has fixed hours of employment; (b) the trip involved on the errand be an integral part of the service performed; and (c) the work performed, although related to the employment, be special in the sense that the task requested was not one which was regular and recurring during the normal hours of employment."

Requirements (a) and (c) are missing in the present case. Villebrun had no fixed hours of employment and the task requested was one which was regular and recurring during the normal hours of employment. On Saturday he was performing the same type of work as on Friday. He and his coworker could have completed the job on Friday but decided to quit early and to come back on Saturday. The employer expected the boxcar would be unloaded on Friday. Decedent was paid on Friday for unloading the boxcar and he didn't receive any additional compensation for his work on Saturday. The fact that employer asked Villebrun to pick up St. Clair when he knew it was their practice to ride together can hardly make their trip to and from work a special errand, considering that St. Clair and Villebrun had decided on Friday to return on Saturday and employer did not ask him to take St. Clair home on Saturday.

■ The commission in its opinion in support of its decision concluded that the employee by engaging in a race at high speeds

incurred an extremely hazardous risk not contemplated by his employment or in any way incidental thereto and departed from his employment. We have concluded that the employee was not engaged in emergency work and was not on a special errand and thus his injury and subsequent death did not arise out of and in the course of his employment. This conclusion makes it unnecessary to consider the question of a departure by employee from employment and the authorities cited by relator and respondent bearing on that issue.

This court need not base its decision on the theory of the commission. In Wheeler v. Wheeler, 184 Minn. 538, 239 N. W. 253,[2] this court reviewed a finding of the Industrial Commission that one Robert Wheeler was an employee of Wheeler & Son while on a trip on which he received a fatal injury. The commission indicated in a memorandum that its finding was based upon a request by the employer that employee should take the trip to his father's farm to advise the latter of the need for supplies for drivers hired by the employer, rather than upon the employee's general employment as a teamster and cook. This court stated:

"* * * Even if this point were controlling (a question we do not decide) we are of the opinion that we are governed by the general finding of the commission. If there is evidence in the record sufficient to sustain that finding, the writ must be discharged. * * * We hold that a memorandum of the commission may not be resorted to for the purpose of showing that its findings are not based upon a tenable theory. The findings will be sustained when the evidence is sufficient for that purpose." 184 Minn. 540, 239 N. W. 254.

We do not decide here the question of whether or not the commission's departure theory is tenable or untenable but do hold that there is substantial evidence to sustain the commission's

---

[2] This case was cited with approval in Christenson v. Pedersen Brothers, 269 Minn. 111, 130 N. W. (2d) 234.

finding that decedent's injuries and subsequent death did not arise out of and in the course of his employment.

Affirmed.