Richard D. VIOLETTE, Respondent,

v.

MIDWEST PRINTING COMPANY–
WEBB PUBLISHING and American
Mutual Insurance Company, Relators,

Steve Keefe, Commissioner of the De-
partment of Labor and Industry,
intervenor, Respondent.

No. C5–87–1233.

Supreme Court of Minnesota.

Nov. 13, 1987.

Andrew W. Lynn, Minneapolis, for relators.

Allen R. Webb, John A. Weinard, Bloomington, for Richard Violette.

Louis Hoffman, Asst. Atty. Gen., St. Paul, for Dept. of Labor and Industry.

YETKA, Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals (WCCA) affirming a compensation judge's decision ordering discontinuance of temporary total disability benefits and commencement of temporary partial disability benefits to Richard D. Violette. We affirm the Workers' Compensation Court of Appeals.

Respondent Richard D. Violette, age 40, graduated from high school in 1967 and obtained an Associate of Arts degree from the University of Minnesota. After leaving school, he worked as a salesman for a clothing store and National Car Rental before Midwest Printing Company hired him in 1973. After working as a general laborer for approximately 4 years, Violette received his journeyman card and began to work as an inkman on the infeed of a wet press.

In the fall of 1984, Violette began to experience hair loss and a burning sensation on his forehead and forearms as well as in his eyes. After seeking medical treatment, Violette was released from employment on March 6, 1985, for medical reasons based on his sensitivity to inks and solvents. At that time, Violette's hourly wage was $16; he was working 6 days each week and earned $43,000 his last full year of employment. Midwest Publishing

and American Mutual Insurance Company, its insurer (hereinafter relators), admitted liability for the injury and began paying temporary total disability benefits on March 7, 1985.

In May of 1985, Violette moved to Palm City, Florida, to pursue a career in real estate sales. After successfully completing a real estate course, Violette obtained a real estate license on September 21, 1985. Sometime thereafter, he was hired by a real estate firm to sell condominiums at a 2% commission with no base salary, draw account, or other benefits. Although working 5 to 7 days per week, Violette made no sales and earned no compensation of any kind. Violette terminated his employment after 2 months. After taking a "battery" of vocational tests given by the Florida Rehabilitation Department, Violette was hired in February of 1986 to work as a salesman in a pro shop at a private golf course. Violette continues to suffer burning sensations when in contact with certain chemicals and cannot return to the printing business. Nevertheless, he has testified that his long-range goal is to become an assistant golf pro through a course of training in his present employment.

Relators filed a notice of intention to discontinue benefits on November 6, 1985, on the grounds that Violette had returned to work as a real estate agent. On November 25, 1985, Violette filed a claim petition for temporary partial disability and permanent partial disability benefits. Upon Violette's request, on December 2, 1985, an administrative conference was held pursuant to Minn.Stat. § 176.242 (1984). A rehabilitation specialist presiding at the confer-

ence received evidence and heard arguments from each party's attorney and determined that reasonable grounds for discontinuance did not exist. Although Violette was employed full time, the specialist determined that temporary total benefits should continue since Violette had no earnings. Continuing to pay temporary total benefits, relators petitioned for a *de novo* hearing before a compensation judge pursuant to Minn.Stat. § 176.242, subd. 5 (1984).

On March 15, 1986, a formal hearing was held before a compensation judge. Evidence introduced by the parties included a stipulation of facts,[1] the administrative decision, medical reports, and Violette's testimony. The compensation judge determined that Violette had returned to work prior to maximum medical recovery within the meaning of section 176.101, subdivision 3f. Therefore, temporary total disability was discontinued as of November 6, 1985. The compensation judge also found that Violette was entitled to temporary partial disability benefits pursuant to subdivision 3h of section 176.101 for as long as his wage loss continued. Although the employer and the insurer raised constitutional issues, the compensation judge stated that she lacked authority to rule on them.

Relators appealed this decision to the WCCA. They argued: (1) that the compensation judge improperly awarded temporary partial disability since the sole issue before the judge was whether temporary total disability should be discontinued, (2) that Minn.Stat. § 176.242 (1984) is unconstitutional, (3) that the procedures employed by the Department of Labor and Industry

---

1. The parties stipulated to the following facts:
   1. None of the rehabilitation specialists employed by the Minnesota Department of Labor and Industry, Section of Rehabilitation and Medical Services, are attorneys.
   2. In determining whether or not "reasonable grounds exist for a discontinuance," as required by Minn.Stat. § 176.242, subd. 2(d), specialists evaluate evidence submitted by both sides and then make factual determinations.
   3. A specialist may consult with another employee of the Minnesota Department of Labor and Industry, prior to issuing a decision, for the purpose of seeking information on or clarification of legal principles.

4. It is the Department's position that the standard for determining whether a discontinuance should be granted in a .242 conference is not whether the employer/insurer has submitted a prima facie case for a discontinuance.
5. Pursuant to Minn.Stat. § 176.021, subd. 1a, "all disputed issues of fact arising under chapter 176 shall be determined by a preponderance of evidence;" therefore, the preponderance of evidence standard is applied in .242 conferences.
6. There is no testimony taken under oath at the .242 conferences.

to administer section 176.242 deny due process, and (4) that the Department of Labor and Industry misinterprets section 176.242. Relators also requested, with Violette's concurrence, that WCCA Judges Altman and Hanson disqualify themselves. The request was denied. Violette appealed only the discontinuance of temporary total benefits, arguing that he remained entitled to such benefits since he had no earnings as a real estate salesman.

The WCCA affirmed the compensation judge's decision and rejected relators' constitutional challenges. The court found that the Department of Labor and Industry properly interpreted section 176.242 to require the employer to prove reasonable grounds for discontinuance by a preponderance of evidence rather than merely establishing a *prima facie* case. Although the court noted that it had no authority to rule on the constitutionality of a legislative enactment, it did find that the procedure requiring proof by a preponderance of evidence did not deny due process. The WCCA also ruled that the binding administrative decision did not deny due process even though the administrative conference lacked certain procedures such as transcription of a verbatim record and opportunity to cross-examine witnesses.

Relators now appeal to this court raising essentially the same issues argued before the WCCA.

I. Whether the Department of Labor and Industry properly interprets Minn. Stat. § 176.242 (1984) as requiring the employer and the insurer to prove by a preponderance of evidence that discontinuance of workers' compensation benefits is warranted;

II. Whether Minn.Stat. § 176.242 (1984) denies due process of law as guaranteed by the United States and Minnesota Constitutions;

III. Whether the compensation judge's award of temporary partial disability benefits denied the employer and the insurer due process of law when the

employer claims that the only issue raised at the hearing was whether employee's total temporary benefits should be terminated;

IV. Whether the employer and the insurer were denied due process of law when two WCCA judges refused to disqualify themselves from hearing the matter.

The employee does not appeal the discontinuance of temporary total disability.

This appeal raises only issues of law; neither party appeals any findings of fact. Thus, where only issues of law are appealed, this court is not bound by the decision of a lower court. *A.J. Chromy Constr. Co. v. Commercial Mechanical Serv., Inc.*, 260 N.W.2d 579, 582 (Minn.1977).

In 1983, the Minnesota Legislature added section 176.242 to Minnesota's workers' compensation statute. The section establishes an administrative procedure for discontinuance of benefits. Prior law allowed an employer and insurer to discontinue benefits merely by filing a notice of intention to discontinue and setting forth supporting reasons. Minn.Stat. § 176.241 (1982). An aggrieved employee could then object to discontinuance and request a hearing before a compensation judge. However, in the interim between the notice of discontinuance and the hearing, no benefits were paid. *Id.*, subd. 2.

Section 176.242 is the legislature's response to the burden placed on the injured worker whose benefits are unilaterally discontinued by the filing of a notice. Now, the worker has the option of requesting an administrative conference after receiving a notice of intention to discontinue. Minn. Stat. § 176.242, subd. 2(a) (1984). The purpose of the conference is to determine if reasonable grounds for discontinuance exist. *Id.*, subd. 2(d). Unilateral discontinuance by the employer and insurer is no longer allowed; rather, a neutral third party determines the issue under section 176.242.[2] The Department of Labor and Indus-

---

2. The employer and insurer apparently could not suspend payments of benefits before the administrative conference. Section 176.241,

subdivision 2 states: "When the division has received a copy of the notice of discontinuance, the statement of facts and available medical

try interprets section 176.242 to require that such a determination be based on a preponderance of the evidence.

■ I. Relators argue that the Department of Labor and Industry misinterprets section 176.242.[3] They assert that the legislature intended section 176.242 to require only that the employer establish a *prima facie* case for discontinuance at the conference rather than provide for a hearing on the merits (*i.e.*, a decision based on a preponderance of the evidence). The employer and the insurer reason that the legislature only intended to remedy arbitrary discontinuance of benefits under prior law and that requiring the employer and the insurer to establish a *prima facie* case for discontinuance is entirely consistent with such a purpose. Violette and the Commissioner of the Department of Labor and Industry (intervenor) argue that such an interpretation contravenes Minn.Stat. § 176.021, subd. 1a (1984), which states that "[a]ll disputed issues of fact arising under chapter 176 shall be determined by a preponderance of evidence." Violette and the commissioner assert that, consistent with section 176.021, all evidence produced at the conference must be weighed and a decision made based on the preponderance of evidence.

The *"prima facie"* standard would do little to remedy prior law, which allowed sometimes arbitrary discontinuance of benefits. There is little difference between discontinuance based on the filing of a notice of intent to discontinue benefits (the former procedure) and discontinuance based merely on the employer's *prima facie* case at an administrative conference (the proposed procedure under relators' interpretation of section 176.242). Both procedures ignore the employee's evidence and are equally susceptible to an arbitrary or erroneous termination of benefits. The preponderance of the evidence standard, on the other hand, creates a procedure to prevent arbitrary termination by viewing all the evidence at the conference.[4] We thus affirm the WCCA's interpretation of section 176.242, which required that the employer and the insurer prove that discontinuance of benefits was warranted by a preponderance of evidence at the administrative conference.

II. Relators next argue that Minn.Stat. § 176.242 (1984) and accompanying admin-

reports, the duty of the employer to pay compensation is suspended, except as provided * * * in sections 176.242 and 176.243." Section 176.242, subdivision 8 states: "Compensation shall not be discontinued prior to an administrative conference except as provided under subdivision 2, clause (b), or if the commissioner determines pursuant to subdivision 3 that no administrative conference is necessary." Subdivision 2, clause (b) of section 176.242 states: "If the employee does not, in a timely manner, request that the commissioner schedule an administrative conference, or fails to appear, without good cause, at a scheduled conference, compensation may be discontinued, subject to the employee's right under section 176.241." Thus, these convoluted statutes provide, in effect, that an employer cannot automatically discontinue compensation after filing a notice if the employee requests an administrative conference.

**3.** Minn.Stat. § 176.242 has been short-lived; the legislature recently repealed this section as well as section 176.241. Act of May 29, 1987, ch. 332, § 117, Minn. Laws 2025. However, these provisions have been replaced with sections 176.238 and 176.239. Act of May 29, 1987, ch. 332, §§ 65, 66, Minn. Laws 2001–04, 2004–2007. The sections set forth administrative procedures for discontinuance that are virtually identical to those found in section 176.241 and 176.242. The most significant difference, however, is that

the new law distinguishes between cases where discontinuance of benefits is sought because the employee has returned to work and cases where discontinuance is sought on other grounds. If an employer files a notice to discontinue benefits because an employee returns to work, the employer may automatically discontinue temporary total benefits and is not required to pay any benefits unless ordered by the commissioner. This changes prior law under sections 176.241 and 176.242, which, as discussed in footnote 2, *supra*, required continuation of compensation if a conference was requested. If discontinuance is based on grounds other than the employee's return to work, the new law is in accord with the old procedure as described in footnote 2, *supra*. In this situation, the employer must, as under prior law, continue payment of benefits if the employee requests an administrative conference.

**4.** The new section 176.239, discussed in footnote 3, *supra*, expressly states that the administrative decision should be based on a preponderance of evidence. This supports the conclusion that the legislature intended, although they did not expressly so state, that section 176.242 administrative decisions be based on a preponderance of evidence.

istrative procedures deny them due process of law by requiring them to continue paying disability to Violette after the administrative decision and at least until the hearing before the compensation judge. They argue due process was lacking because: (1) there was no verbatim record of the conference, (2) there was no procedure for determining the relevance or competence of evidence, (3) the administrative decision was made by a person not learned in the law, and (4) there was no opportunity for review of the administrative decision.

■ We find that the proper test for determining whether section 176.242 affords all process that is constitutionally due requires a weighing of the three factors set forth in *Mathews v. Eldridge*, 424 U.S. 319, 96 S.Ct. 893, 47 L.Ed.2d 18 (1976). These factors are: (1) the harm to the private interest, (2) the risk that the procedure will reach an erroneous result and the likelihood that additional procedures would reduce that risk, and (3) the government's interest and the burdens additional procedural safeguards would entail. *Id.* at 335, 96 S.Ct. at 903. Under this test, we hold that the provisions of section 176.242 afford all process that is due under both the United States and Minnesota Constitutions.

■ First, the harm suffered by relators when required to continue payment of benefits after an adverse administrative decision is small in light of the ability to obtain an expedited *de novo* hearing of record pursuant to Minn.R. 1415.2100 (1984) and receive a credit for overpayments pursuant to Minn.Stat. § 176.179 (1984). Second, the risk of an erroneous result is relatively low because all parties are permitted to submit arguments and evidence at the informal conference. Third, the government has an important interest in providing an informal and expeditious preliminary procedure for resolving workers' compensation disputes. The addition of the procedures suggested by relators (*e.g.*, a verbatim record and the use of formal evidentiary rules) would act as a costly impairment to this governmental interest while only marginally reducing any risk of error.

The only disturbing factor about this issue is that a person not learned in the law is the decisionmaker at the administrative conference. However, the decisionmaker is permitted to consult with an attorney of the Department of Labor and Industry. Furthermore, where a complete trial *de novo* can be had expeditiously, little harm results. The situation is akin to the Minnesota judicial system a few years ago which allowed justices of the peace, as well as municipal and probate judges, to be lay persons. While that system was found to be wanting and was abolished, its constitutionality was not in doubt, for a trial *de novo* was available in a higher court of record.

In sum, a weighing of these factors leads to the conclusion that administrative conference procedures under section 176.242 afford all process that is constitutionally due. The harm to the private interest and the risk of error are minimal. The additional procedures urged by relators would only marginally, if at all, reduce the risk of error. Such procedures are unwarranted in light of the costly burden they would place on the government and in light of the ability to petition for an expedited *de novo* hearing of record.

The cases cited by relators do not support their position nor alter our conclusion. Relators first cite *Zimprich v. Hiniker*, 34 W.C.D. 620 (1982), where the WCCA struck down a penalty assessed against the employer by the Department of Labor and Industry. In *Zimprich*, no hearing before the commissioner or a compensation judge was ever held on the penalty issue. When the insurer requested a hearing, it was advised to appeal to the WCCA. The WCCA stated that there was no record to review and that due process was denied because no hearing was ever held. The instant case has no similar deprivation since a full *de novo* hearing on the discontinuance issue was held before a compensation judge.

■ Next, the employer and the insurer cite *Hunter v. Zenith Dredge Company*, 220 Minn. 318, 19 N.W.2d 795 (1945), in support of the contention that a lack of a record

of the administrative conference denies due process. *Hunter* struck down a statute establishing a medical board that issued binding decisions on occupational disease questions. The appellate court determined that it could not effectively review the board's decision because no record of the basis of the decision was made, thus denying due process. Relators argue by analogy that, because there was no record made at the conference, there can be no effective review of the administrative decision, thus denying due process. The analogy fails, however, because, here, although the administrative decision is binding on the parties, relators have a right to a *de novo* hearing before a compensation judge. No similar opportunity was afforded in *Hunter*.

The employer and the insurer next cite *Jackson v. Red Owl*, 375 N.W.2d 13 (Minn.1985), and *Gutz v. Honeywell, Inc.*, 399 N.W.2d 557 (Minn.1987), in support of the argument that the decision of a lay person on discontinuance of benefits denies due process. In *Jackson*, the court narrowly construed Minn.Stat. § 176.103, subd. 1 (1984), finding that it did not grant authority to the commissioner to decide medical causation issues. Although the court partially based its narrow construction on the notion that legal issues should not be decided by a lay person, the case was not decided on constitutional grounds. Unlike *Jackson*, the instant case does not present the issue of whether the legislature intended to grant the commissioner authority to make a decision as to discontinuance of benefits; section 176.242 clearly grants such authority. Instead, the issue is whether such authority placed in the hands of a lay person denies due process. Because *Jackson* did not reach this issue, it does not support relators' position.

In *Gutz*, the court upheld the procedure in Minn.Stat. § 176.102 (1984) where a panel of lay persons determined an employee's right to rehabilitation benefits. The court found that the panel decision pursuant to section 176.102 did not deny due process even though there was no *de novo* review before a compensation judge. In upholding section 176.102, the court determined that a procedure containing one less safeguard than section 176.242—a *de novo* review by a compensation judge—nevertheless, meets due process requirements. *Gutz* is inconsistent with relators' argument and, in fact, supports the constitutional validity of an administrative decision by a lay person when that decision is reviewable *de novo* by a compensation judge. Thus, none of the cases cited by relators alters our conclusion that section 176.242 does not deny due process.

■ III. Next, relators argue that they were denied due process by the compensation judge's award of temporary partial disability benefits when such benefits were not at issue. Relators cite *Leudesdorf v. Royal Tires, Inc.*, No. 339–62–805 (WCCA Mar. 3, 1986), in support of their position. In *Leudesdorf*, the WCCA disallowed an award of permanent partial disability benefits as violative of due process where neither party ever addressed such benefits at or before the compensation judge's hearing. *Leudesdorf* is distinguishable in that the employee never claimed he was entitled to permanent partial disability. Indeed, the WCCA framed the issue as: "Whether the employer/insurer were denied due process of law by an award of 85% permanent partial disability of the skin as an organ system where such a claim was never advanced by the employee." In the instant case, however, Violette filed a claim petition in November 1985 for temporary partial disability benefits. Nevertheless, relators argue that the sole issue before the compensation judge was discontinuance of temporary total disability benefits and that a hearing on temporary partial benefits was never held, thus denying due process.

Violette essentially argues that relators had notice and ample opportunity to present evidence on the issue of temporary partial disability. Violette asserts that relators had statutory notice that an injured worker who returns to work is entitled to temporary partial disability pursuant to Minn.Stat. § 176.101, subd. 3h (1984). Furthermore, the administrative decision expressly indicated that when Violette did have earnings, he should submit wage

records to the employer to expedite receipt of temporary partial disability benefits. Violette also asserts that relators had ample opportunity to present evidence concerning temporary partial disability and that evidence was introduced as to each of the four elements of temporary partial disability as set out in *Dorn v. A.J. Chromy Constr. Co.*, 310 Minn. 42, 47, 245 N.W.2d 451, 454 (1976).[5] Finally, Violette cites *Wobschall v. Geo. A. Hormel*, 36 W.C.D. 431 (1984), for the proposition that the compensation judge has authority to change the form of a claim for benefits if such a change is supported by the record.

Relators initiated this entire proceeding with a notice of intention to discontinue temporary total benefits on the basis that Violette returned to work. Although not expressed by relators in their notice, the statutory authority for discontinuance of temporary total benefits when an injured worker returns to work lies in Minn.Stat. § 176.101, subds. 3e, 3f (1984). Section 176.101, subd. 3h states that, where an employee accepts a job under 3e or 3f, temporary partial benefits shall commence. Subdivision 3e or 3f and subdivision 3h, therefore, appear to work in tandem and cannot be viewed separately. Given this express statutory directive and Violette's claim petition for temporary partial disability, the issue of such benefits was before the compensation judge notwithstanding relators' claims to the contrary.

At the hearing, evidence was introduced as to Violette's injury and recurring symptoms, his ability to work, his efforts to rehabilitate himself, his employment plans and earning capacity. This evidence relates to each of the four temporary partial disability factors and supports the award of temporary partial benefits. Although relators challenge this finding, they point to no evidence that such benefits are un-

warranted.[6] Thus, the award of temporary partial disability benefits does not deny due process.

▮ IV. Finally, relators argue that a denial of due process resulted from the refusal of two WCCA judges to recuse themselves. Relators based their request for disqualification on two grounds: First, relators asserted personal bias since, prior to this case, both judges had publicly expressed an opinion as to the constitutionality of section 176.242. With respect to this basis for disqualification, even though the WCCA is an agency of the executive branch, we do not deem it inappropriate to suggest that the WCCA should consider that portion of the commentary of section 3.42 of the ABA Standards of Judicial Administration, Standards Relating to Appellate Courts which states the following standard:

> Moreover, because an appellate court decides questions of law rather than fact, the question of an appellate judge's "bias" is often practically indistinguishable from the question of his views on the law, which are not properly subject to disputation through the recusal procedure. Given these complications, it is better that the question of recusal be decided by the judge himself. If he is a judge of an intermediate appellate court, there remains the remedy of appeal from a decision in which he participates; if he is a judge of a supreme court, reliance must be placed on his recognition that a court should not only be disinterested but that it should appear to be so.

*See Minnesota ex rel. Wild v. Otis*, 257 N.W.2d 361, 363 (Minn.1977). Here, relators' request for disqualification was based on the judges' "views on the law." This provides no basis for recusal.

---

5. The four elements are: (1) a physical disability must exist, (2) the disability must be temporary in nature, (3) the disability must be partial, and (4) there must be an actual loss of earning capacity causally related to the disability.

6. Relators did argue before the compensation judge that benefits should be discontinued since Violette allegedly left the labor market. Al-

though this might be a basis for disallowing *all* benefits, the employer and insurer apparently have not pursued this argument after being unsuccessful before the compensation judge. They prefer to argue that the question of temporary partial benefits was not before the compensation judge, thus avoiding the issue of removal from the labor market.

**326**

■ Relators' second basis was that both judges were previously associated with the Department of Labor and Industry, a party intervenor in this litigation. Canon 3C(1)(b) of the Code of Judicial Conduct requires judges to disqualify themselves when their impartiality may be reasonably questioned in instances where "a lawyer with whom (they) previously practiced law *served during such association* as a lawyer concerning this matter." (Emphasis added.) This section does not mandate disqualification since neither judge in question worked with the Department of Labor and Industry during the litigation of this matter. Therefore, we find no denial of due process based on the judges' refusal to disqualify themselves.

■ At oral argument, there appeared to have been some confusion as to whether there is any rule applicable to judges serving on the WCCA. We thus feel compelled to comment here that, although there may not exist a statutory rule requiring disqualification, a WCCA judge should recuse under the ABA Standards of Judicial Administration whenever those rules apply. In short, whenever a conflict of interest exists and the appearance of a lack of impartiality would taint a decision, a judge should recuse. We have held on numerous occasions that it is not enough that a legal proceeding be fair and impartial, but also essential that the litigants believe that it is so. *Jones v. Jones*, 242 Minn. 251, 262, 64 N.W.2d 508, 515 (1954); *Wiedemann v. Wiedemann*, 228 Minn. 174, 177, 36 N.W. 2d 810, 812 (1949).

The Workers' Compensation Court of Appeals is affirmed.