James Robert AROUNI, Respondent,

v.

KELLEHER CONSTRUCTION, INC., Aetna Casualty & Surety Co., Relators.

No. C1–88–87.

Supreme Court of Minnesota.

July 8, 1988.

Peter J. Pustorino, Minneapolis, for relators.

Michael J. Healey, St. Paul, for respondent.

## OPINION

SIMONETT, Justice.

This is an appeal from a decision of the Workers' Compensation Court of Appeals reversing a compensation judge's findings relative to a claimant's entitlement to temporary partial and permanent partial disability compensation. We reverse and reinstate the decision of the compensation judge.

In October 1983, employee James Robert Arouni started working for employer Kelleher Construction, Inc. as a construction laborer doing primarily concrete work. On June 6, 1984, employee injured his low back shoveling concrete. He began visiting a chiropractor who advised employee to refrain from working for 2 weeks. Employer asked employee to see a physician and referred him to Dr. Jetzer at the Airport Medical Clinic. Dr. Jetzer ordered a CT scan which showed mild degenerative disc space narrowing at L3–4 and L4–5 plus mild central bulging at L4–5, and to a lesser extent at L5–S1. Employee eventually returned to work, first in a light duty capacity and then on a fulltime, full duty basis. Although he had back pain and felt he could not continue in the construction trade, employee did not discuss these concerns with his employer.

About 2 months after the back injury, on August 10, employee quit his job with the employer. Employee has maintained that he quit because of his back condition; what he told his employer, however, was that he was leaving the construction business to "look for something in sales." On August 11, employee started working full time as an airport limousine driver on the 2:00–11:00 p.m. shift. The driving job was temporary in nature and employee intended to continue driving only until he could establish a new career. He attempted to enter the financial planning field, but his efforts were unsuccessful.

On October 26, 1984, employer received a letter from employee's attorney requesting payment of temporary partial disability benefits. Employer promptly notified employee and his attorney that it had a light-duty job available for employee on Monday

morning. Employer further set up an appointment for the employee to be examined by Dr. Jetzer but also told employee he could see another physician of his choice. On October 29, when employee failed to report for work, employer contacted him by phone. Employee said he was undecided as to what he wanted to do about the job offer. On October 30, employer sent employee and his attorney another letter again advising that light duty work was available and would be within the scope of *any* physician's work restrictions. On November 1, employer prepared a written description of the light-duty job offer and submitted it to its workers' compensation insurer, Aetna Casualty & Surety. The written description advised that none of the work would exceed lifting 15 pounds. Insurer forwarded the written description to employee's attorney along with a refusal to pay temporary benefits. Neither employee nor his attorney responded to any of these letters offering a job.

On November 1, 1984, employee was examined by Dr. Jetzer who found no objective evidence of a back disability. To rule out a nerve root contusion, Dr. Jetzer scheduled an EMG. He limited employee to lifting 10 pounds and bending 2 times per hour subject to further evaluation based on EMG results after November 6. Employee did not return to Dr. Jetzer.

On November 6, 1984, employee was referred by his attorney to Dr. Ault, an orthopedic surgeon. Dr. Ault described employee as having good range of motion of his back, symmetrical reflexes, and some decreased sensation in the right leg and foot. He was instructed in back care and an exercise program. Employee was seen again by Dr. Ault in February 1985 and generally the examination suggested degenerative disc disease without any herniation. Dr. Ault felt it was too early to determine whether employee would be able to return to the construction business. The employee was next seen by Dr. Ault on April 4, 1985, and the doctor noted the employee had some discomfort with straight leg raising on the right but that the examination was otherwise unremarkable. Dr. Ault recommended a continued exercise program and did not think employee was a surgical candidate. Employee was last examined by Dr. Ault in January 1986. He again had good range of motion except for some limitation upon extension. Dr. Ault again recommended exercises.

Employee was then referred by his attorney to Dr. Wengler, an orthopedic surgeon. Dr. Wengler conducted a lumbar thermogram which showed evidence of right fifth lumbar nerve fiber dysfunction, and he concluded that employee had a 14% permanent partial disability under the applicable disability schedule. Dr. Wengler suggested a 25 pound lifting restriction and no repetitive bending, stooping, heavy pushing or pulling. He thought employee should not return to construction work.

Employer/insurer had employee examined by Dr. Wicklund, another orthopedist. Dr. Wicklund found an essentially normal back on examination. He was under the impression that employee had sustained a low back strain on June 6, 1984. He did not feel employee sustained a permanent injury but did advise a 50 pound lifting restriction and avoidance of repetitive bending.

Employee filed a claim petition and a hearing was held on August 13, 1986 before Compensation Judge Ronald E. Erickson. At that time employee testified that his low back continued to be stiff and sore and that he still had radiating pain and occasional numbness. He also testified that he did not respond to employer's October 1985 offer of employment because he felt he could not physically do the work. Louise Hennen, a qualified rehabilitation consultant testifying on behalf of the employee, agreed that the offered employment exceeded the work restrictions of Dr. Wengler and Dr. Jetzer (as he imposed them in November 1984). She also believed the employee was "grossly underemployed" as a limousine driver. Thomas Kelleher, the owner of the company, testified he was not aware employee needed light duty work at the time employee left in August 1984. He also testified he made a good faith job offer at employee's pre-injury wage and that he would not have al-

lowed the offered job to exceed any medical restrictions.

Compensation Judge Erickson found that employee reached maximum medical improvement as of April 4, 1985. He further found that employee's termination of employment with the employer to be unrelated to his back.[1] He also found that employee had not established a partial disability as of August 10, 1984 sufficient to limit his work activities and to justify an award of temporary partial disability benefits. The compensation judge believed employee's "voluntary departure from employment in August 1984 rendered moot" the ensuing events. Nevertheless, the compensation judge believed the job offer was one the employee could do or should at least attempt to do; and he believed that temporary partial benefits were therefore not payable under Minn.Stat. § 176.101, subd. 3n. The compensation judge also denied employee's claim for permanent partial benefits.

On appeal, the Workers' Compensation Court of Appeals reversed and substituted the following findings:

3. The employee's personal injury of June 4, 1984 is permanent, affects employability and reduces his earning capacity.

4. The employee's voluntary termination from the employer on August 10, 1984 due to his personal injury is not a removal from the labor market.

5. The employee's rejection of the light-duty job offer in November, 1984, prior to maximum medical improvement, hereinafter MMI, *does not* bar his right to future temporary partial disability pursuant to Minn.Stat. § 176.101, subds. 3e, 3n.

[Emphasis original].

6. The employee is entitled to temporary partial disability from August 11, 1984 up to and including the day of the hearing and continuing based on the earnings at St. Paul Limousine Service.

7. The employee has a 3.5% permanent partial disability to the body as a whole as a substantial result of the personal injury to his back on June 6, 1984.

By writ of certiorari, employer/insurer have appealed contending that the Workers' Compensation Court of Appeals exceeded its authority in reversing the findings of the compensation judge.

■■■ 1. First, with respect to the employee's entitlement to temporary partial disability compensation, we find it significant that the employer offered the employee light-duty work at his pre-injury wage, and that the employee elected to remain "underemployed" in his limousine driving job. We agree with the Workers' Compensation Court of Appeals that because the job offer was made prior to maximum medical improvement, the applicable statutory provisions are section 176.101, subdivisions 3f and 3h (1984) of the Minnesota Statutes:

Subd. 3f. Job prior to maximum medical improvement. If the employer offers a job prior to the employee reaching maximum medical improvement and the job is consistent with an approved plan of rehabilitation or if no rehabilitation plan has been approved and the job is within the employee's physical limitations; or the employer procures a job for the employee with another employer which meets the requirements of the subdivision; or the employee accepts a job with another employer which meets the requirements of this subdivision, the employee's temporary total compensation shall cease. In this case the employee shall receive impairment compensation for the permanent partial disability which is ascertainable at that time. This impairment compensation shall be paid at the same rate that temporary total compensation was last paid. Upon reaching

---

1. This finding was based on evidence that employee did not advise employer that he needed to find lighter work; that he did not say he was quitting because of his back; that Dr. Jetzer authorized his return to work without restrictions in July 1984 subject to further evaluation; that he quit and went immediately into the limousine business; and that Dr. Jetzer's examination of employee's back 2 weeks after employee quit his construction job was objectively normal.

maximum medical improvement the provisions of subdivisions 3e or 3p apply, whichever is appropriate, and economic recovery compensation or impairment compensation is payable accordingly except that the compensation shall be offset by impairment compensation received under this subdivision.

\* \* \* \* \* \*

Subd. 3h. Temporary partial compensation. An employee who accepts a job under subdivision 3e or subdivision 3f and begins that job shall receive temporary partial compensation pursuant to subdivision 2, if appropriate.

In this case, the employee obtained a 3f job before the employer made a 3f job offer. We do not read the statute to prohibit temporary partial benefits if an employee manages on his or her own to obtain an "appropriate" 3f job before the employer makes a bona fide offer. However, the statutory scheme under the 1983 amendments to the Workers' Compensation Act does not alter basic principles concerning entitlement to weekly benefits at least between the date of injury and maximum medical improvement. *Redgate v. Sroga's Standard Serv.*, 421 N.W.2d 729 (Minn. 1988). One such basic principle is that an employee's loss of earning capacity must be causally related to the disability. *Dorn v. A.J. Chromy Constr. Co.*, 310 Minn. 42, 47, 245 N.W.2d 451, 454 (1976); *see also Violette v. Midwest Printing–Webb Publishing*, 415 N.W.2d 318 (Minn.1987).

Thus, benefits have been denied if the compensation judge finds an employee rejected a bona fide "suitable" job offer or obtained "unsuitable" employment on his own. *See Johnson v. State, Dept. of Veterans Affairs*, 400 N.W.2d 729 (Minn.1987); *Hanmer v. Wes Barrette Masonry*, 403 N.W.2d 839 (Minn.1987). Of course, we note that a subdivision 3f job need not be "suitable" within the meaning of subdivision 3e of section 176.101. It can be any job the employee can physically handle. Still, under section 176.021, subdivision 3, an employer/insurer's liability is tied to the employee's inability to earn due to a work injury. We therefore do not read subdivision 3f to hold liable an employer/insurer who in good faith offers an appropriate 3f job at the pre-injury wage to an employee who elects to remain in an inappropriate low paying job of his own choosing. *Hanmer, supra.*[2] In short, this employee's reduction in earnings is not causally related to his disability. The Workers' Compensation Court of Appeals award of temporary partial benefits is therefore reversed.[3]

2. We next address the compensability of the employee's injury under the disability schedule. At the hearing, the employee took the position he was entitled to compensation for a 14% permanent partial disability to the body as a whole under 8 MCAR 1.9007A2a.[4] The compensation judge held that 8 MCAR 1.9007A2a was not applicable because the employee did not produce the necessary evidence of a herni-

2. With the employer, employee had an average weekly wage of $350.85. As a limousine driver, he averaged $167.62 per week.

3. This conclusion makes it unnecessary to consider whether the employee's termination of employment was causally related to his back disability or whether, as of August 10, 1984, this disability significantly limited his work activities. This court need not base its decision on the theory of the factfinder. *See Villebrun v. Fryrear*, 288 Minn. 478, 183 N.W.2d 279 (1970). General findings will be sustained where the evidence is sufficient for that purpose. *Wheeler v. Wheeler*, 184 Minn. 538, 540, 239 N.W. 253, 254 (1931). Thus, we have not decided whether the compensation judge's theory was tenable although we must reiterate that where more than one inference may reasonably be drawn from conflicting evidence, the Workers' Com-

pensation Court of Appeals must uphold the compensation judge. *Gibberd v. Control Data Corp.*, 424 N.W.2d 776 (Minn.1988). *Redgate v. Sroga's Standard Serv.*, 421 N.W.2d 729 (Minn. 1988); *Hengemuhle v. Long Prairie Jaycees*, 358 N.W.2d 54 (Minn.1984). What we have decided is that there is substantial evidence to sustain the compensation judge's general finding that the employee failed to establish one of the necessary elements of temporary partial disability, that his loss in earnings was causally related to his disability.

4. The citations are to the disability schedules contained in the Department of Labor and Industry's temporary rules, the rules in effect on the date of injury. The particular rules applicable in this case are identical to the subsequently adopted permanent rules.

ated disc. That finding was affirmed by the Workers' Compensation Court of Appeals. The employee also made an alternative claim for 7% permanent partial disability to the body as a whole pursuant to 8 MCAR 1.9007A1c(1), or for "whatever permanent disability he might be entitled to under the law that the evidence would show that his proof conforms to." The compensation judge denied the alternative claim, finding that upon examination, employee generally was found to have good range of motion and that his subjective complaints of pain were not substantiated by objective clinical findings which were reproducible and consistent. The Workers' Compensation Court of Appeals reversed this finding and awarded compensation for a 3.5% permanent partial disability to the body as a whole pursuant to 8 MCAR 1.9007A1b.

■ Pursuant to a MCAR 1.9007A1b, a lumbar back injury is compensable if the following is present:

Pain associated with rigidity (loss of motion or postural abnormality) or chronic muscle spasm. The chronic muscle spasm or rigidity is substantiated by objective clinical findings but without associated demonstrable degenerative changes. 3.5 percent.

The definition section of the disability scheduled defines objective clinical findings as "examination results which are reproducible and consistent." Examples of objective clinical findings are "involuntary muscle spasm, consistent postural abnormalities and changes in deep tendon reflexes." 8 MCAR 1.9002DD. In awarding permanent partial disability, the Workers' Compensation Court of Appeals stated:

The employee testified to continuing complaints notwithstanding the lack of findings of muscle spasms on examination. The employee has continually testified to soreness and stiffness as it relates to this lumbar spine. This soreness and stiffness is exacerbated with activity. As such, 8 MCAR 1.9007A1b is applicable.

The employer/insurer argue that the Workers' Compensation Court of Appeals erred in awarding permanent partial benefits under the rule in question based only on the employee's testimony. We agree. The rule does appear to require some medical evidence to support a compensable claim. As neither the compensation judge nor the Workers' Compensation Court of Appeals found the claim sufficiently supported by medical evidence, the employee's injury was not compensable under 8 MCAR 1.9007A1b. For these reasons, the award of permanent partial disability compensation is likewise reversed.

Reversed and decision of compensation judge reinstated.